[L. A. No. 223.    Department Two.—May 7, 1897.]

# HENRY L. ROTHSCHILD, Appellant, *v.* F. W. SWOPE, Respondent.

Sale of Stock of Merchandise—Statute of Frauds—Change of Possession—Indicia of Ownership—Void Sale—Attachment.—Upon sale of a stock of merchandise to certain creditors of the merchant, in full of their claims, in order to render the change of possession sufficient to satisfy the statute of frauds, it must not only be actual and continued, but must be open and unequivocal, carrying with it the usual marks and indications of ownership on the part of the vendees, and must be such as to proclaim to the world the new ownership, and to evidence the usual relationship between property and its owner, and must be taken to be retained, and not with the purpose to return it to the vendor; and where the change of possession is not of that character, the sale is void *ab initio*, as to other creditors of the vendor, and the unsold portion of the goods may be seized upon attachment against the vendor, at suit of a creditor not participating in the sale.

Id.—Tests of Validity—Presumption of Possession by Vendor.—The character of the sale and the character of the possession give the true color to the transaction, as valid or void, depending upon the intention and conduct of the parties in making the sale, and upon the circumstances surrounding the parties while the vendor is out of possession; and the mere fact alone that the vendor resumed possession within two weeks after the sale, does not necessarily import fraud, nor that the possession of the vendees was not continued; neither does it imply a right to repurchase or take back the property, but is at most a circumstance to be considered in reference to the intention of the parties.

Id.—Conditional Transfer—Agreement for Repossession by Vendor. Where the evidence tended to show that an agent of the vendees, having full authority to represent them, agreed with the vendor, not for an absolute or unconditional change of possession, but for a temporary possession for the purpose of a forced and limited sale, and that the vendor was again to have possession when the amount due the vendees as creditors was realized, it being believed that the assets were sufficient to pay all the creditors, upon a return of possession to the vendor by such agent, the goods may be attached in his possession, as his property, regardless of the question whether the claims of the creditors to whom the transfer was made had been satisfied in full or not.

Id.—Evidence—Testimony of Vendor—Purpose of Sale—Statements of Agent—Cross-Examination.—The vendor may testify that, at the time he made the bill of sale to the creditors, it was understood and agreed between him and the agent of the vendees that the store was to be returned to him when the claims of the creditors were realized, as showing the purpose of the bill of sale made while he was in possession, nor does the rule of law as to the impeachment of a deed by the grantor after the execution apply to such a case; and the statements of the agent of the vendor, both when making the agreement and when surrendering possession to him, are also admissible as tending to show what was originally contemplated by the parties, and the agent himself may be asked on cross-examination as to the purpose of the bill of sale.

APPEAL from an order of the Superior Court of Riverside County denying a new trial. J. S. NOYES, Judge

The facts are stated in the opinion.

*George A. Rankin,* for Appellant.

Conceding that Mouldin acted within the scope of his authority in placing Stanton in possession, the property was not thereby rendered subject to attachment at the suit of Simms, for Rothschild's possession was so open and notorious, and so long continued and so exclusive, that the subsequent possession by Stanton would not render it liable to attachment for his antecedent debts. (*Stevens* v. *Irwin,* 15 Cal. 503; 76 Am. Dec. 500.)

*Oscar Philo Taylor,* for Respondent.

There was no such continued change of possession as is required by the statute, and the transfer is therefore conclusively presumed fraudulent and void, and the presumption cannot be rebutted or explained. (*Cahoon* v. *Marshall,* 25 Cal. 201; *Lay* v. *Neville,* 25 Cal. 545; *Woods* v. *Bugbey,* 29 Cal. 472; *Watson* v. *Rodgers,* 53 Cal. 402; *Hesthal* v. *Myles,* 53 Cal. 624; *Merrill* v. *Hurlburt,* 63 Cal. 495; *Bunting* v. *Saltz,* 84 Cal. 169.)

CHIPMAN, C.—This is an action for conversion brought by plaintiff against defendant for a certain stock of goods and merchandise which defendant had seized by writ of attachment as sheriff of Riverside county in the suit entitled J. A. Simms *versus* E. M. Stanton. The defendant justified under his writ. Plaintiff claims ownership of the goods at the time of their seizure. The cause was tried by the court, and it rendered judgment for defendant. Plaintiff moved for a new trial, which was denied, and this appeal is from the order denying the motion.

The testimony tended to show the following facts:

The said Stanton, in 1893, was engaged in the jewelry business at Riverside. He made a proposition to cer-

tain San Francisco creditors by letter, dated December 10, 1893, as to his financial situation, the result of which was that these creditors assigned their claims to plaintiff and empowered him, as they testify, to purchase the stock of goods held by Stanton and receipt the several claims so assigned—"the goods to be taken in full of the creditor's claims."

This letter becomes important in the decision of the case and should be at least partly given.

Stanton enclosed a statement of his condition; he called attention to the fact that he owed much more than he or his creditors had supposed, and explains how he lost sight of his true condition; he disclaims having attempted to deceive his creditors. I quote: "Now, if you feel that you would be more secure I will give you a bill of sale of stock and fixtures, as I do not want to do anything that is not satisfactory to all my creditors. They have all been kind to me. I send you a paper containing an advertisement to close out my business, which, of course, I do not intend to do, but had to write it in such a way as to convey that idea in order to make a success. I expect to sell enough by December 31st to pay all I owe." The letter continues in some detail to show how he hopes to work out; he explains why he has advertised the special cut-rate holiday sale, and that he thought it best for all concerned, etc., etc.

Following this letter the creditors addressed sent plaintiff as their representative to Riverside. They also employed one Hugh Mauldin, an expert jewelry salesman, to go with plaintiff. On December 23, 1893, Stanton made and delivered to plaintiff a bill of sale, and plaintiff went into immediate possession of the property. Attached to the bill of sale was an inventory headed, "Invoice, Riverside, November 20, 1893," purporting to contain an inventory of the goods sold, including book accounts, fixtures, and a horse and saddle, and on the bill of sale were recapitulated Stanton's assets and liabilities, showing: Assets, $11,874.86, and liabili-

ties, $6,342.09. The sale was absolute on its face and was for the consideration of $5,532.77. Plaintiff took the assignment of two insurance policies covering the property, which were accepted by the companies. Plaintiff testified that by his own inventory, made at the time, the goods were reasonably worth $7,007.81, besides fixtures and tools, etc., worth $1,200 more.

He also testified that at the time of the sale he receipted to Stanton the bills due to the creditors whom he represented to the amount mentioned in the bill of sale, to wit: $5,532.77, and there was no other consideration. The sale and transfer took place about nine o'clock Saturday evening, the following Monday was Christmas, and the inventory was begun on the following Tuesday, and the store was closed until Thursday, December 28th, when plaintiff opened it. On that day, as plaintiff testifies, he placed Mr. Hugh Mauldin in charge, who is a jewelry salesman and makes a specialty of forced sales in the jewelry line. . . . . Employed him to take possession of the store for me," and plaintiff himself went away. He testified also that Mauldin "was employed as a clerk for the purpose of carrying on the business, and not otherwise." One of the creditors testified that Mauldin was authorized to be employed by them, and that his employment was for a short time and the sale was to be forced. In the daily papers of Riverside Mauldin caused the following notice to be published, as he testified:

"SALE EXTRAORDINARY.

"For only fourteen days. By authority of San Francisco creditors of E. M. Stanton I will offer for sale at cost, for a limited number of days, the entire stock of the Stanton jewelry establishment, 855 Main street, Riverside, commencing to-day, December 28, at 10 A. M., and continuing until the evening of January 13th prox. In no instance will more than the cost the dealers pay at wholesale be asked, and, as no new goods will be added to the stock, it is confidently believed that fourteen days will attain the object of the sale. Mr. Stan-

ton himself and his able assistant, Mr. J. S. Baker, will be in attendance.   Come early and get your pick.

"Hugh Mauldin, Manager."

He testified that he received $1,459.81 from sales.  I quote further from his testimony: "I ran the sale until the night of 13th of January.  Q. What did you do with the store then?  A. I left it; I was through.  Q. To whom did you give the keys?  A. I left them on the cases.  I put Mr. Stanton in my position, and left the thing that way."   Mauldin added to this notice of sale, and it was published on the last day of the sale, the following:

" Closes to-night.   The Stanton sale closes to-night at ten o'clock."

On January 19, 1894, the defendant levied a writ of attachment upon the remaining goods then in Stanton's possession at the suit of said Simms, and subsequently sold them for $2,270.94.

From plaintiff's statement of the facts it appears that Mauldin returned to San Francisco on the 14th of January and informed plaintiff and the creditors that he had turned over possession of the goods to Stanton. On the 15th of January plaintiff wrote one J. S. Baker (who had been a clerk of Stanton and had assisted Mauldin) to get the keys from Stanton and take charge of the store, to which Baker replied on the 17th, stating that Stanton was in charge of the store; that Mauldin had expected instructions, and, receiving none, turned over the store to Stanton.  Stanton refused to turn over the store to Baker.

As to the real purpose of the bill of sale the evidence is conflicting, as indeed it is almost throughout the record.   The creditors concur in testifying that plaintiff had no authority to promise Stanton anything, but that the goods would be taken in payment of the debts; that it was to be an unconditional sale, and that plaintiff had no authority to make it a conditional sale.  The evidence of Stanton was to the effect that the bill of sale was given as mere matter of security; that Roths-

child (plaintiff) so recognized it; that it would not take over two weeks to realize the amount due, and he would then return the stock; that the purpose of the bill of sale was merely to protect plaintiff, as well as himself, to show authority; that it would be better for him (Stanton) so that people would think it a *bona fide* sale. Plaintiff as a witness denied substantially that any such understanding existed as testified to by Stanton, and objected to the latter's testimony as incompetent because it contradicted the terms of his written bill of sale, and because plaintiff, as agent of these creditors, had no authority to make such agreement. This objection will be dealt with later.

Before Mauldin turned the goods over to Stanton they had some conversation on the subject, and to the statements of Mauldin objection was made by plaintiff on the ground that he, Mauldin, had no authority to make them, and this objection will be hereafter noticed. Stanton testified that two or three days before turning over the store Mauldin said to Stanton that he expected to be through on Saturday night and would turn the keys over; that he, Stanton, had better stay out of the store until Saturday evening, then he would turn it over to him.

On January 20th plaintiff wrote to Stanton a letter, from which I quote:

" In a letter from Mr. Baker this morning I learned that Mr. Mauldin gave you the keys and placed you in possession of the store, which he did without my knowledge and without any authority whatever. For the present such was not my plan, and I request you to kindly give the keys to Mr. Baker and leave him in the possession of the store. In a very short time we can make satisfactory arrangements between us, but for the present the above instructions are necessary to be followed, else people will think the sale is over and that things are again in their normal condition, which spoils every possibility of realizing money to any extent. For

the same reason I would request you to keep out of the store as much as possible until we make other arrangements."

It appeared also that when plaintiff took possession Stanton had a sign over the door in letters two feet long and eight inches wide, and covered most of the sign. Plaintiff caused to be painted on the margin of this sign in letters about one-half inch in size "Henry L. Rothschild, successor." There were two small bevel signs consisting simply of Stanton's name in black letters, one inch in size, that were placed in the windows as part of the dressing of the windows. These were not removed. Stanton erased the name of Rothschild from the large sign when he retook possession. Defendant introduced in evidence a local item published in the Riverside *Daily Press* of December 26, 1893, reading as follows:

" E. M. Stanton's jewelry store was closed to-day pending taking invoice. Hugh Mauldin, who closed D. E. La Rue's jewelry stock a couple of years ago, is here in charge of the store. After a certain amount of goods have been sold, we understand Mr. Stanton will take charge again and conduct the business. We sincerely hope they will come out all right, for Ed Stanton is a popular and highly esteemed young man." Stanton testified that this was inserted by either plaintiff or Mauldin, and it was while plaintiff was there.

As to Mauldin's authority, the plaintiff testified as follows: " Q. Did you ever give Hugh Mauldin authority to turn this store back to Stanton or return the possession of it? A. I told him to act for me. Q. Act for you in what? A. In every capacity that I could act for myself." At another time he testified that Mauldin was simply a clerk to sell the goods, and his further instructions were not to leave until further directed. Appellant makes two points in his brief as to the findings of the court:

First. That Mauldin had no authority to turn over

the goods to Stanton, and that in doing so it did not revest the title in Stanton; and

Second.    That if Mauldin acted within the scope of his authority, it does not follow that the goods became subject to attachment at the suit of Simms, because plaintiff's possession was open, notorious, and continued.

The view of the case taken by the court below was that the possession was not open and notorious and continued, and that the sale was fraudulent and void as to the then existing creditors under section 3440, Civil Code.

It appears to me that the court was fully warranted in reaching this conclusion from all the facts and circumstances, and, therefore, neither the question as to the authority of the vendee, as the representative of the creditors, nor of those who were acting as agents of the vendee, need be considered, except so far as their acts and conduct may throw light upon the original transaction.

If, as to creditors of Stanton, the sale to plaintiff was void *ab initio*, it becomes immaterial whether Stanton was or was not revested with title by Mauldin; as to creditors the title never left Stanton.

There is, perhaps, no one section of our Civil Code that has given rise to greater perplexity in its application to the transfer of personal property than section 3440.    Notwithstanding the numerous decisions of this court and the many lucid and comprehensive opinions found in our reports, it has been found impossible to formulate a rule for all cases.    It must always rest with the enlightened judge or jury to say whether, under the given facts and circumstances, the sale should be upheld as against existing creditors.    The justice and wisdom of the statute are too deeply intrenched, both in the lay as well as in the judicial mind, to longer admit of question; the law has the sanction of adoption by all civilized countries, and has found application in the affairs of men everywhere since the days of Queen Elizabeth. Counsel for appellant is quite correct in saying that the

statute of frauds should not be " changed into an instrument for the perpetration of fraud, instead of its prevention"; but neither should it be made a cloak under which fraud can find shelter.

The case before us is unique in, many features. As an illustration of an attempt of certain creditors to secure payment by preference, with a reasonable belief that enough would remain out of which to pay the remaining creditors, the transaction was not unnatural nor strained. But as a transaction importing an absolute. transfer of title, as vendor and vendee ordinarily regard title, or as the law considers it, it seems to me the essential elements are wholly wanting.

I do not think the fact alone that Stanton took possession within two weeks after the sale necessarily imports fraud or that the possession was not continued; neither does it imply a right to repurchase or take back the property. At most it is but a circumstance in the case. No rule can possibly be laid down as to the length of the interim during which the vendor is out of possession before he can repurchase or become repossessed. It all rests with the intent and conduct of the parties in making the sale, and upon the circumstances surrounding the parties while the vendor is out of possession. (*Stevens* v. *Irwin,* 15 Cal. 503, 76 Am. Dec. 500.)

I have already attempted to summarize the salient facts from which the trial court apparently drew its conclusions; there were still other facts of more or less significance. It is true the evidence was not without conflict, but there was evidence tending to show the facts to be as already stated, and we cannot say that the court took the wrong view in these conflicts.

This court thirty-seven years ago, in *Stevens* v. *Irwin,* *supra,* gave an interpretation to the statute which has stood unassailed ever since. Perhaps no better general interpretation of the law has since been given. It was there said:

" The delivery must be made of the property; the

vendee must take *actual* possession; that possession
must be open and unequivocal, carrying with it the
usual marks and indications of ownership by the ven-
dee.    It must be such as to give evidence to the world
of the claims of the owner.    He must, in other words,
be in the usual relation to the property which owners
of goods occupy to their property.    This possession
must be continuous—not taken to be surrendered back
again—not formal, but substantial."

In the case before us I think there was immediate
delivery followed by actual possession.    As to length of
time possession was held, that alone would not, in my
judgment, change the fact of possession.    But it was
the character of the sale and the character of the pos-
session that gave the true color to the transaction.    Im-
mediate delivery and actual possession alone are not
enough; actual and immediate delivery, followed by
possession and continued possession are not enough, al-
though these are literally all the law requires.    The pos-
session must be open and unequivocal, carrying with it
the usual marks and indications of ownership of the
vendee; it must be such as to proclaim to the world the
new ownership; it must have carried with it evidence of
the usual relationship between property and its owner; it
must be taken to be retained, and not with a purpose to
return it to the vendor.    (*Levy* v. *Scott*, 46 Pac. Rep.
892.)    Tested by this rule, I cannot say that the court
erred in applying the facts found, nor that it erred in
finding the facts as it did."

Appellant submitted much testimony tending to show
that the suit of Simms against Stanton, under which
defendant justifies, was collusive, and that Simms knew
of the sale by Stanton to plaintiff.    The court below
in its opinion (found in the record) stated that Simms
knew of the sale to plaintiff, but the court held that at
the time of the attachment the property was in Stan-
ton's possession with every apparent evidence of owner-
ship in him, and all evidences of plaintiff's ownership
obliterated, and was therefore subject to attachment by

Stanton's creditors; and I cannot say the court erred in this conclusion.

If plaintiff had alleged and proved a fraudulent collusion between Simms and Stanton to get possession, followed up by proof of a collusive attachment, the case would have been quite different. But it nowhere appears that Simms and other creditors, who were not provided for in plaintiff's purchase, had anything to do with the surrender of possession to Stanton by Mauldin.

2. As to the powers of plaintiff and Mauldin as agents of the creditors, I think the evidence warrants the conclusion of the trial court that plaintiff had full authority to act for the creditors; he went to Riverside upon the written invitation of Stanton, in which he said to his creditors in San Francisco: "Now, if you feel that you would be more secure, I will give you a bill of sale of stock and fixtures, as I do not want to do anything that is not satisfactory to all my creditors." There was believed to be sufficient to pay all. The evidence tended to show that plaintiff went into possession with the understanding that it was not an absolute and unconditional sale, but a temporary possession for the purposes of a forced and limited sale, and that Stanton was again to have possession. Plaintiff turned the property over to Mauldin to conduct the sale, and the evidence tended to show with such powers as he himself had. Plaintiff returned to San Francisco, and we must presume reported the facts as they existed. If he did not, the creditors ought not to be heard to complain. They trusted him to take the title and to conduct the business, and I think should be bound by the acts of plaintiff. The evidence tended to show that Mauldin succeeded to the power of plaintiff. Stanton testified that there was a mutual understanding between plaintiff, Mauldin, and himself that the store was to be returned to him when the amount due the San Francisco creditors was realized; that Mauldin stated that he had realized different amounts—at one time he stated it at $1,500, and at another $3,000 or $4,000, and that when the stock was

turned over to him (Stanton), he didn't know but that the claims were paid in full, and he stated he supposed they were paid or the stock would not have been turned over to him; that he didn't then know, nor did he know when he testified, whether they had been paid in full as a fact. After plaintiff left, the creditors corresponded with Mauldin and gave him instructions. This correspondence, so far as printed, seems to me to corroborate the view of the case taken by the trial court.

3. The objection made to Stanton's testimony as to the purpose of the bill of sale, noted in the summary of facts, I do not think well taken. It did not relate alone to conversations after the sale, but, as I understand it, related to the understanding both before and after the paper was signed, and was while he was in possession· I think it was competent for defendant to show just what was said and done by the principals to the sale at the time it was made, and what they both understood was its intention. The rule of law as to impeachment of deed by the grantor after its execution does not here apply. The facts both before and since the making of the bill of sale tend to show that it was not intended to work an absolute sale. Nor was the objection well taken that plaintiff had no authority to make such an agreement. As already observed, Stanton had a right to assume that plaintiff had full authority, and this being so, he could show what was done by plaintiff. For like reasons the statements of Mauldin at the time he turned over the property to Stanton were admissible. The evidence tended to show that Stanton understood from both plaintiff and Mauldin that he, Mauldin, was clothed with all of plaintiff's authority, and in turning over the property he seemed to be doing no more than what the evidence tended to show was originally contemplated. Other errors of law are assigned by plaintiff as occurring at the trial. Several questions were asked plaintiff on cross-examination as to what was said or done when the bill of sale was signed, intended to draw from plaintiff an acknowledgment as to the purpose of the instru-

ment. I see no error here. If it was true that the bill of sale did not in fact express its true meaning, and that it had a purpose different from what it disclosed, I see no error in having asked plaintiff about it. I find no prejudicial error in any of the other specifications.

My conclusion upon the whole case is that the record discloses no reversible error, and it is recommended that the order be affirmed.

BELCHER, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion, the order appealed from is affirmed.

McFARLAND, J., TEMPLE, J., HENSHAW, J.