· [No. 4617.   Decided November 10, 1903.]

## J. W. YOUNG, *Respondent,* v. SEATTLE TRANSFER COMPANY, *Appellant.*[1]

WAREHOUSEMAN—LOSS OF GOODS—CONTRACTS BY TELEPHONE—EVIDENCE—SUFFICIENCY. In an action for the value of a trunk claimed to have been stored with a transfer company, a verdict for the plaintiff is not supported by any evidence where the only proof tending to show the receipt of the trunk was the fact of a telephone order for its removal and storage, given to defendant's number and answered by an unidentified person who stated it was the defendant, and that an unidentified expressman removed the trunk.

Appeal by defendant from a judgment of the superior court for King county, Bell, J., entered October 15, 1902, upon the verdict of a jury rendered in favor of the plaintiff for the sum of $240 damages for conversion.   Reversed.

*Metcalfe & Jurey,* for appellant. The presumption that the defendant received the telephone order for the

[1]Reported in 74 Pac. 375.

trunk cannot be made the basis for another presumption
that it called and removed it.    22 Am. & Eng. Enc. Law,
p. 1236 (2d ed.) ; Lawson, Presumptive Evid. 569 ; *Man-
ning v. John Hancock Ins. Co.,* 100 U. S. 693, 25 L. Ed.
761; *United States v. Ross,* 92 U. S. 281, 23 L. Ed. 761;
*McAleer v. McMurray,* 58 Pa. St. 126 ; *Douglass v. Mitch-
ell's Ex'r,* 35 Pa. St. 440 ; *Glick v. Kansas City, etc. R.
Co.,* 57 Mo. App. 97 ; *Moore v. Missouri Pac. R. Co.,* 28
Mo. App. 622 ; *Richmond v. Aiken,* 25 Vt. 324 ; *Adm'r
of Hammond v. Smith,* 17 Vt. 231 ; *Pennington's Ex'r v.
Yell,* 11 Ark. 212, 52 Am. Dec. 262 ; *Danley v. Rector,* 10
Ark. 211, 50 Am. Dec. 242 ; *Missouri Pac. R. Co. v. Por-
ter,* 73 Tex. 304, 11 S. W. 324 ; *Murray v. Peterson,* 6
Wash. 418, 33 Pac. 969.

*Ballinger, Ronald & Battle,* for respondent, cited 25
Am. & Eng. Enc. Law, 885.

PER CURIAM.—This was an action begun in the superior
court of King county by respondent, J. W. Young, for the
recovery of the value of a trunk and contents alleged to
have been stored in the month of August, 1898, with ap-
pellant, Seattle Transfer Company.    The answer was a
general denial, except as to the incorporation of appellant,
the character of its business, and the demand for the trunk.
The cause was tried to a jury in the superior court, a ver-
dict was rendered in favor of respondent against appellant
for $240, and judgment was entered on the verdict for that
amount and costs, from which it appeals to this court.

At the trial, after respondent rested, appellant moved
for a nonsuit, which was denied.    Appellant thereupon
submitted its evidence, and after the rendition of the ver-
dict moved the court for a new trial, which was overruled.
Appellant excepted to each ruling in denying its request
for a nonsuit and its motion for a new trial.    The assign-

ment of error presents the sole question in the case, was there evidence to support the verdict of the jury?

Under the issues, as formulated by the pleadings, the burden of proof was cast upon respondent to show by some testimony that the Seattle Transfer Company undertook to receive and place in storage, for a consideration, in one of its warehouses at the city of Seattle, respondent's trunk and contents, and that in pursuance of such agreement appellant did receive said goods for that purpose. The evidence bearing on these propositions, adduced at the trial on behalf of respondent and appellant, may be summarized as follows: Respondent and one Ramsay, in February, 1898, jointly occupied a room at the Yesler residence in Seattle. Respondent, intending to go to Alaska, placed certain of his wearing apparel in said trunk, then in the Yesler residence in the custody of Mr. Ramsay, to remain in the room they were jointly occupying until Mr. Ramsay should desire to move from said place, in which event he was instructed by respondent to store the trunk with appellant company; that some time during the month of August, 1898, Ramsay, intending to remove from the Yesler residence, attempted to communicate with the appellant about the storage of the trunk on two different occasions. At the trial the circumstances regarding such communications were related by Ramsay in his direct examination in the following language:

"I rang up the Seattle Transfer Company and told them to send up and get Mr. Young's trunk at the Yesler home, where we were rooming, and take it down and put it in storage for Mr. Young; and somehow they didn't send up for the trunk that day; so when I went back to my room that night I found the trunk hadn't been sent for; so the following day I telephoned again to the Seattle Transfer Company, and told them I would like for them to send up and get that trunk right away; that I wanted

to move, and would like for them to take care of it; and they said they would send a man up to attend to it that day; so when I went back home that evening I found the trunk had been called for and taken away."

This witness also testified in this connection, in response to questions propounded by respondent's counsel, in the following manner:

"Q. You don't know, of course, who it was at the other end of the line that you were talking to? A. No, I do not. Q. How did you— Just explain to the jury what you did, now, about reaching the office of the Seattle Transfer Company. A. Well, I did in that case the same as I would do in any other—just simply looked up the number in the directory, and rang up and inquired if that was the Seattle Tranfer Company. Q. What reply did you get? A. They replied that it was. So then I requested them to send up and get the trunk."

Ramsay, on cross-examination, testified, that he telephoned from Newhall's store down town in Seattle each time; that he did not recognize the voice of the person addressed at either time; that he did not recollect the number of the telephone he called up, and did not know who took the trunk away from the house. Mrs. Emma Gagle, who lived at the Yesler residence at that time, testified: "I know that the trunk was taken from the Yesler residence. I don't know the party's name who took it, but I do know it was an expressman. I don't know where the trunk was taken." No check or receipt for the trunk was ever asked for or received by Ramsay or Mrs. Gagle from the appellant or the expressman who removed the trunk. The respondent at that time was in Alaska.

In the spring of the year 1900, Young wrote Ramsay from Alaska, requesting him to go to the transfer company and get his trunk, pay the storage charges, and send it to him. Ramsay, pursuant to such request, went to the office

of appellant, and after diligent search the company was unable to find any trace of the trunk or its contents, either by consulting its books or by searching through its warehouse. Respondent testified that he left Seattle for Alaska in February, 1898, corroborated Mr. Ramsay with regard to leaving the trunk and contents with him, and authorizing him to store same with appellant; and testified further, that he never at any time saw the trunk in the possession of the transfer company; that he personally had had no agreement with the company concerning the trunk, but had left the matter in Ramsay's hands; that, on his return from Alaska, he went to the office of appellant and had a conversation concerning the trunk with Mr. Shaubut, in charge of the baggage department of the transfer company. Respondent testified: "We went down into the storage room to see if witness could pick out the trunk, and were unable to find it. Mr. Shaubut claimed that the company did not have it." The date of this conversation and search was not definitely fixed by Mr. Young, but Mr. Shaubut, testifying on behalf of appellant, said it was about one year prior to the trial of the cause, thereby fixing the date about June 12, 1901.

On behalf of appellant the testimony tended to show, that no record was ever made with reference to the trunk; that thorough search was had and no trace of it or its contents could be found; that the company, in the month of August, 1898, did an extensive storage and transfer business; that mistakes had sometimes occurred in handling merchandise; that the three witnesses examined on behalf of appellant, who were at that time agents and officers of the transfer company, had no knowledge or recollection of the communications over the telephone alleged to have been made by Ramsay; witness Shepard testifying, that in the

month of August, 1898, he was clerk in the office of appellant company, that it was his business to receive orders communicated over the telephone, and that while he happened to be out of the office attending to the company's affairs some one else might answer calls at the telephone.

The appellant contends that the evidence produced at the trial failed to show that the trunk and contents in question ever came into the possession of the Seattle Transfer Company by virtue of any contract or arrangement made or had with respondent, or in any other manner.    The *onus probandi* was upon respondent at the trial as to the issues tendered by him, above noted.    The jury, having rendered a verdict in respondent's favor, must necessarily have found that the trunk and contents came into appellant's possession by virtue of some contractual relation entered into between some agent of appellant and Mr. Ramsay, representing the respondent.    Verdicts of juries as well as findings of courts, in determining questions of fact, must be based upon testimony.    *Reidhead v. Skagit County,* ante, p. 174, 73 Pac. 1118.

When material to the issues, communications through the medium of the telephone may be shown in the same manner, and with like effect, as conversations had between individuals face to face, but the identity of the party sought to be charged with a liability must be established by some testimony, either direct or circumstantial.    It is not always necessary that the voice of the party answering, or of either party, for that matter, be recognized by the other in such conversations, but the identity of the person or persons holding the conversation, in order to fix a liability upon them or their principals, must in some manner be shown.    To hold parties responsible for answers made by unidentified persons, in response to calls at the tele-

phone from their offices or places of business concerning
their affairs, opens the door for fraud and imposition, and
establishes a dangerous precedent, which is not sanctioned
by any rule of law or principle of ethics of which we are
aware.    A party relying or acting upon a communication
of that character takes the risk of establishing the identity
of the person conversing with him at the other end of the
line.

The able counsel for respondent argue that the case at
bar presents the question as to the weight of evidence—
that the jury having found in respondent's favor on these
issues, the court will not interfere.    On that branch of the
case, relating to communications over the telephone as evi-
dence, our attention is directed to 25 Am. & Eng. Enc.
Law, p. 885 (1st ed.), where the following language is
used:

"There may be cases, however, in which the fact that the
voice is not recognizable, and that neither party can be ab-
solutely sure of the identity of the person conversing with
him, may necessitate the application of exceptional rules."

Several cases are cited in the foot note in support of this
proposition.    *Wolfe v. Missouri Pacific Ry. Co.,* 97 Mo.
473, 11 S. W. 49, 3 L. R. A. 539, 10 Am. St. 33, was an
action brought by plaintiffs (respondents) against the com-
pany (appellant) to recover damages for breach of a con-
tract for the carriage and delivery of merchandise.    At
page 477, Barclay, J., delivering the opinion of the court
observes:    "In the progress of the trial the court admitted
testimony of alleged conversations by telephone connected
with plaintiff's office, though the witness did not identify
the voice he heard at their instrument."    The opinion
states subsequently that there was ample testimony to sup-
port the finding of the trial court, and that its instruc-
tions were correct; and then proceeds to remark:    "A

question arose incidentally at the trial upon the admission in evidence of a conversation held through the telephone between some one at the instrument in plaintiff's private office and the witness." It is significant that the subject matter of the conversation is not discussed by the court. The language, in connection with facts of the case as shown by the decision, would imply that the alleged communication was not very material to the issues, as the court remarked further on: "The ruling here announced is intended to determine merely the admissibility of such conversations in such circumstances, but not the effect of such evidence after its admission."

In the controversy at bar, appellant does not question the admissibility of Ramsay's alleged conversations over the telephone with reference to the trunk, but contends that they fail to connect appellant with the transaction.

The case of *Globe Printing Co. v. Stahl*, 23 Mo. App. 451, bears more directly on the propositions discussed by the respective counsel in the case at bar. The action was brought by the printing company (respondent) against Stahl (appellant) for the purpose of collecting a debt. The facts appear in the opinion of the court at page 452, and are thus stated:

"The sole question which arises upon the record is whether the court erred in admitting evidence of a conversation had through a telephone between the plaintiff's bookkeeper and a person who answered to the defendant's name. The bookkeeper testified that he called up by telephone to the general office of the Bell Telephone Company for the defendant's number, and was, by the central office, connected therewith; that the list of the telephone company showed that the defendant had two telephones, one at his undertaking establishment on Franklin avenue, in the city of St. Louis, and another at his livery stable, on Olive street; that witness was not certain which number he

called, but that his best recollection was that it was the
Olive street number; that there was an answer from the
defendants' number to the telephone call; that he (the wit-
ness) did not know whose voice it was, and does not now
know; that the witness did not know the defendant's voice
and did not know the defendant, but that he asked, through
the telephone, if that was Stahl (the defendant) and the
answer was 'Yes.'    The witness was then asked to give the
conversation then had through the telephone with the party
answering the call.    In response to this question the wit-
ness testified, against the objection of the defendant, 'that
he asked why defendant did not pay the bill for which this
suit was brought, and that the party answering said, "All
right; I will attend to the matter about the first of the
month." '    A previous witness had testified for the plaintiff
to a conversation through the telephone in a similar man-
ner with the defendant, whose voice the former witness
identified."

The court ruled that the testimony was admissible.    In
that case it appeared that the bookkeeper of respondent
identified Stahl by first inquiring if it were he who an-
swered the call at the telephone.    Receiving an affirmative
response, he talked with Stahl about the debt for which
suit was brought; though Stahl's voice was not recognized,
still it should be borne in mind that the alleged conversa-
tion related to prior dealings had between the parties to
the litigation.    It further appears that a previous witness,
who recognized the voice, had testified to a conversation
had with Stahl over the telephone.    The court very prop-
erly held that the testimony was admissible.    While it ap-
pears in the case at bar that neither respondent nor Mr.
Ramsay had any previous dealings with the appellant con-
cerning the trunk in question, Ramsay did not, on either
of the occasions named, make any effort to identify the
party or parties.

The facts in the other cases cited by the author were so dissimilar to those presented in this controversy we deem it unnecessary to comment upon them.   The respondent offered no evidence to supply "the missing link" in that regard.   The jury was permitted to guess, and base its findings thereon, that some agent or employe of the appellant answered witness Ramsey's communications, or at least one of them; that in pursuance thereof an employe of the transfer company, who was unknown and unidentified by the testimony, called and removed the trunk from the Yesler residence.   This is not a question as to the weight of evidence, but one of failure of proof on material issues tendered by respondent and denied by appellant.   A verdict based on such considerations cannot stand.

We are therefore of the opinion that the trial court erred in denying appellant's motions for a nonsuit and for a new trial, that the verdict of the jury was not sustained by the evidence, that the judgment of the superior court should be reversed, and the case remanded with directions to dismiss the action, and it is so ordered.