PORTER *v.* GOUDZWAARD.

1. FRAUDULENT CONVEYANCES — BULK SALES ACT — CREDITORS — ESTOPPEL.

A creditor is not estopped from enforcing his remedy under the "Bulk Sales Act" (Act No. 223, Pub. Acts 1905) by the fact that he was present when the consideration for a transfer of his debtor's stock was paid, without knowing the details of the transaction, which failed to comply with the provisions of statute; the purchaser taking no different or prejudicial course because of any conduct of the creditor.

2. ESTOPPEL—ELEMENTS—EQUITY.

Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights, which might otherwise have existed, as against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who acquires some corresponding right, either of property, of contract, or of remedy.

Error to Kent; McDonald, J. Submitted April 15, 1910. (Docket No. 128.) Decided July 14, 1910.

Replevin by Edwin F. Porter against Louis Goudzwaard. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed.

*Dunham & Phelps*, for appellant.

*William Wisner Taylor*, for appellee.

MOORE, J. Albert H. Vohlers, for some time prior to December 27, 1907, kept a liquor saloon in Grand Rapids, and owned and had therein a stock of liquors and other things, the ordinary outfit of a liquor saloon, except the bar fixtures and certain furniture, which belonged to the Schlitz Brewing Company and which are not involved in this cause. On September 30, 1907, Mr. McGann became the accommodation indorser for Mr. Vohlers on a promissory note for $150, payable to and at the National City Bank of Grand Rapids, due in 90 days. On December 27, 1907, Mr. Vohlers sold to Mr. Porter for a consideration, stated to be $750, all the goods and chattels in the saloon, except the bar fixtures and furniture belonging to the Schlitz Brewing Company. Mr. Vohlers did not pay the note, and Mr. McGann paid it within a day or two after it was due. On April 18, 1908, by writ of attachment from the superior court of Grand Rapids, duly issued, Mr. McGann attached the goods and chattels in question. Mr. Porter immediately replevined them from the deputy sheriff, Goudzwaard, before they were removed under the attachment. Upon the trial a verdict was directed in favor of the defendant.

The case involves a construction of Act No. 223 of the Public Acts of 1905, known as the "Sales in Bulk Act." It is conceded that the provisions of the act were not followed. The only question involved is the matter of an alleged estoppel as against Mr. McGann, the actual, but not the nominal, defendant.

The claim of estoppel is based upon the testimony of Mr. Porter, the material parts of which are as follows:

" At the time this sale was made and the money paid, Dave McGann was present and I showed him the money; he saw me pay the money to Mr. Vohlers. He sat right in a chair by the table, about 20 or 30 feet from where I paid it.

"Q. When you paid the money to Vohlers what did McGann say to you about Vohlers owing him, and about Vohlers coming down there to settle, if anything?

"A. He said,—he asked Vohlers for the money, and he (Vohlers) said he would be down and settle with him at two o'clock, and he said 'all right,' and went away.

"Q. Was that the first time you knew he owed Mr. Vohlers?

"A. That was the first time I knew that he owed him a cent; I made a satisfactory arrangement with all the persons named in the affidavit. I didn't owe Mr. McGann anything at the time the attachment was issued."

On the cross-examination he testified:

" I paid the money to Mr. Vohlers on the 27th day of December. I don't know that I did—not positively. The bill of sale is dated on the 27th day of December. I think that was about the time I paid the money.

"Q. You paid him the same day?

"A. I think that is correct.   *   *   *   After the 27th day of December I conducted the business there. I didn't change the sign, nor the license. I didn't pay the State, county or city tax for the year 1907, and up to May, 1908; I just took out a government license. I didn't take out any State or city license as a retail liquor dealer. This transaction was completed—closed between Mr. Vohlers and myself—on the 27th or 28th day of December, 1907, and the next day I did business there for myself under Mr. Vohlers' license, State and city.   *   *   *   I paid the money to him about 12 o'clock at the saloon—12 or 1 o'clock. None of the parties named in Vohlers' affidavit were present at the saloon at that time.

"Q. Mr. McGann was there?

"A. Yes, and he saw me pay Mr. Vohlers a lot of money.

"Q. You didn't show Mr. McGann that paper, did you, that afternoon, when he was there?

"*A.* No; I didn't show it to him.  I didn't know that Vohlers owed Mr. McGann.  I didn't show him the paper, neither did I show him the bill of sale."

Redirect examination:

"The price that was put down on those things was put down by Vohlers about a week before the money was paid, or a week and a half.

"*Q.* How long before you paid the money, how long before the bill of sale was made out had you agreed with Vohlers to take the place?

"*A.* Well, now, I cannot just tell you, for sure.  I had the inventory a week or ten days before.  Mr. McGann didn't say to me why he came up there at that time.  I think Mr. McGann was there probably half an hour."

McGann's version of what occurred is quite different from this.  It is evident from the testimony of Mr. Porter, giving it full credence, that either when the talk was had with Mr. McGann the sale had been made, or that Mr. Porter had knowledge of the existence of this debt before he completed the transaction by making the final payment.  In either event it is difficult to see how Mr. McGann, who knew nothing of the details of the transaction, is estopped.  Mr. Porter saw fit to make the purchase without complying with the terms of the statute, and without taking any precaution to see that the note upon which Mr. McGann was an indorser was paid. There are various definitions of estoppel to be found in 2 Herman on Estoppel, pages 883 and 884, but they do not justify the contention of appellant.

In 2 Pomeroy's Equity Jurisprudence (3d Ed.), §§ 804, 812, the following appears:

"SEC. 804.  Definition.  From the foregoing general description it will appear, I think, that the following definition is accurate, and covers all phases and applications of the doctrine:  Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another

person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

"SEC. 812. Same.   The conduct must be relied upon, and be an inducement for the other party to act.   Whatever may be the real intention of the party making the representation, it is absolutely essential that this representation, whether consisting of words, acts, or silence, should be believed and relied upon as the inducement for action by the party who claims the benefit of the estoppel, and that, so relying upon it, and induced by it, he should take some action."

See, also, *Rust* v. *Bennett*, 39 Mich. 521; *Maxwell* v. *Bay City Bridge Co.*, 46 Mich. 278 ( 9 N. W. 410); *Bond* v. *Markstrum*, 102 Mich. 11, 19 (60 N. W. 282).

There is nothing in the record to show that the conduct or words of Mr. McGann affected the conduct of the plaintiff in any way.

Judgment is affirmed.

OSTRANDER, HOOKER, McALVAY, and BROOKE, JJ., concurred.