## WILLIAMSON-HALSELL-FRASIER CO. v. KING.

No. 4792.    Opinion Filed July 11. 1916.

(158 Pac. 1142.)

1.    **FRAUDULENT · CONVEYANCES—Transactions Invalid—Retention of Possession.** A transfer of personal property to be valid under section 2933, Comp. Laws 1909, must be accompanied by an actual and continued change of possession, which must be open, notorious, and unequivocal, and such as to apprise the community and those who deal with the party that the goods have changed hands and the title thereto has passed from the vendor to the vendee.

2.    **FRAUDULENT CONVEYANCES—Retention of Possession—Notice.** Notice or knowledge of a transfer of personal property capable of manual delivery, unaccompanied by a change of possession, will not prevent an existing **bona fide** creditor from seizing said property upon attachment or execution.

3.    **EVIDENCE—Declarations—Telephone Conversation.** The admission of evidence as to conversations over a telephone is governed in the main by the rules governing evidence as to ordinary oral statements; except that the identity of the person against whom the statement is sought to be used must first be established.

4.    **ESTOPPEL—Elements—Reliance on Representations.** It is the very essence of an estoppel that the person claiming the benefits thereof was induced thereby to do the things which he did; and one who has not altered his situation in reliance upon the conduct or statement urged cannot predicate an estoppel thereon.

(Syllabus by the Court.)

*Error from County Court, Oklahoma County;*
*John W. Hayson, Judge.*

Action by D. King against the Williamson-Halsell-Frasier Company. Judgment for plaintiff, and defendant brings error. Reversed.

*Burwell, Crockett & Johnson,* for plaintiff in error.

*Giddings & Giddings,* for defendant in error.

HARDY, J.  Defendant in error as plaintiff commenced this action against plaintiff in error to recover damages for the wrongful attachment and sale of certain fixtures claimed by him.  For convenience the parties will be referred to as they appeared in the trial court.  Verdict was for plaintiff.

It appears from the evidence that one J. Y. Burke was indebted to defendant upon account, and on August 23, 1911, suit was commenced thereon, and upon August 24 a writ of attachment was levied upon certain fixtures in possession of said Burke and afterwards sold.  The evidence of plaintiff tended to establish that on August 23´ he purchased said fixtures for $300, and left same in possession of Burke under an agreement that they were to remain in his possession until the first of the next month succeeding the date of the sale.  Upon this state of facts defendant says that because there was no change of possession the transfer was void under section 2933, Comp. Laws 1909, which reads as follows:

"Every transfer of personal property other than a thing in action  *  *  *  is conclusively presumed, if made by a person having at the time possession or control of the property and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent and therefore void, against those who are his creditors while he remains in possession.  *  *  *"

This section of the statute has been construed by this court and by the Supreme Court of Oklahoma Territory in a number of cases, and it has been uniformly held that it contemplates an actual and continued change of possession which must be open and notorious, and such in its character as to apprise those who are accustomed to deal with the party that the property has changed hands; and it is further held that the statute admits of no explanation excusing the delivery and change of possession, and that by the passage thereof it was the intention of the Legislature to exclude all inquiry as to the consideration for the sale or the motives prompting the same, and, where there is no such change of possession, the transfer is fraudulent and the courts have no right to avoid its force and effect. *Swartzburg v. Dickerson*, 12 Okla. 566, 73 Pac. 282; *Walters v. Ratliff*, 10 Okla. 262, 61 Pac. 1070; *Love v. Hill*, 21 Okla. 347, 96 Pac. 623; *Ellet-Kendall Shoe Co. v. Ross*, 28 Okla. 697, 115 Pac. 892; *McCord-Collins Mercantile Co. v. Dodson*, 32 Okla. 561, 121 Pac. 1085.

Plaintiff admits that at the time of the sale it was agreed that Burke should remain in possession of the fixtures until the first of the succeeding month, but he claims that as soon as Burke received the money and before the levy of the attachment he absconded and left his son in charge, and that the son notified the defendant the fixtures had been sold and paid for by King, and that King was the owner and that there had been an actual change of possession. When Burke left his son in charge to sell the stock of goods and pay creditors, with the fixtures still in the store, the possession of the son was Burke's possession and there was not such a change of possession as was contemplated by the statute. The mere fact that notice was given by the son to the defendant of the sale did not defeat

defendant's right of attachment. To say; because a creditor has notice or knowledge that his debtor has conveyed a portion of his property unaccompanied by an actual change of possession, the statute does not apply, is to defeat the very purpose of the statute. This precise point does not appear to have been determined heretofore in this state, but similar statutes have been considered in other states and the authorities hold that notice or knowledge of a transfer of personal property will not prevent an existing *bona fide* creditor from purchasing the property so transferred in satisfaction of his debt, or from seizing it upon attachment or execution if the property is found in possession of the debtor with all the *indicia* of ownership. If the transfer is void under the statute, the mere fact that the creditor has knowledge thereof cannot make it valid nor prevent him from seizing the property upon legal process, unless he has consented to the sale or done some act that would estop him from questioning it. See 20 Cyc. 551; *Fitch v. Corbett,* 64 Cal. 150, 28 Pac. 231; *Rothschild v. Swope,* 116 Cal. 670, 48 Pac. 911; *Helgert v. Stewart,* 20 Colo. App. 202, 77 Pac. 1091; *Harkness v. Smith,* 3 Idaho (Hasb.) 221, 28 Pac. 423; *Lowe v. Matson et al.,* 140 Ill. 108, 29 N. E. 1036; *Hart v. Farmers & Mec. Bank,* 33 Vt. 252.

It is said that defendant assented to the sale, and because thereof is estopped from questioning plaintiff's title. Plaintiff testified that before the sale was consummated a person who said his name was Armstrong called plaintiff over the telephone and asked if he had purchased the fixtures, and was told a purchase had not been made but that plaintiff was thinking about it, and the person said "All right" and hung up the receiver; that the day before the attachment was levied the same person called

plaintiff over the telephone and inquired if he had purchased said fixtures, and was informed that he had, and said person then inquired in what way they had been paid for and was told that they had been paid for in cash, and the person talking then said "All right" and hung up the receiver; that he did not know Mr. Armstrong and could not point him out in court; that, after the attachment was levied, plaintiff went to the place of business of the defendant and there talked to a man who said his name was Armstrong; that the voice of the person talking over the phone was the same as that of the person in the office, who said his name was Armstrong.  O. R. Armstrong, manager of defendant's Oklahoma City house, testified that he looked after the business generally of defendant; that he never had any conversation with plaintiff and never saw him until the day of the trial.  Upon this state of facts it is urged that the court committed error in admitting the testimony concerning the alleged conversations with Armstrong over the telephone, and that such conversation was incompetent in the absence of further evidence identifying the person calling as Armstrong.  The general rule as to the admission in evidence of telephonic conversations is given in 12 Enc. Ev. 477, as follows:

"Telephone conversations, in so far as concerns their admissibility in evidence, are in the main governed by the same rule of evidence which governs the admissions in evidence of oral statements made in an ordinary conversation, except, of course, the necessity of identification of the party against whom the conversation is sought to be used. * * * Before such conversation may be received in evidence, however, the identity of the party sought to be charged therewith must be established."

In the application of the rule quoted it is held that the identity of the person should be established by some

testimony, though the evidence may be either direct or circumstantial, as, for example, that witness was acquainted with the person talking and recognized his voice. But such identity must be in some way established. See Chamberlayne's Modern Law Ev. sec. 794, 1741c; *Young v. Seattle Transfer Co.*, 33 Wash. 225, 74 Pac. 357, 63 L. R. A. 988, 99 Am. Rep. 942; *Murphy v. Jack et al.*, 142 N. Y. 215, 36 N. E. 882, 40 Am. St. Rep. 590; *Swing v. Walker*, 27 Pa. Super. Ct. 366. If a different rule were applied it would open the door for fraud and imposition and would result in holding persons responsible for the statements of unidentified persons using their telephone, and such a rule would be without precedent and not sanctioned by any rule of law.

Plaintiff further says that defendant consented to the sale and is thereby estopped to question its validity. In Bump on Fraudulent Conveyances, sec. 4560, it is stated:

"Although a creditor is not a party to a fraudulent transfer, yet he may subsequently elect to confirm it, for any one may dispense with a provision of the law which was made for his own protection. But before there can be any binding confirmation, he must have notice or knowledge of the facts which constitute the fraud. If he has, however, been guilty of negligence in availing himself of information within his reach, constructive notice may be imputed to him. Mere acquiescence, by taking no present measures to interfere with the transfer, does not amount to a confirmation, for he can be precluded from assailing the transfer only on the ground of estoppel or agreement; there must be a benefit conferred upon him, or a disadvantage suffered by the grantee such as can bind the conscience of the former or clothe his act with the character of a contract. If, without consideration, he says that the transfer may stand, and the grantee does not act upon this statement in a manner different from what he otherwise

would have done, or if the circumstances are such that he can retract what he says without prejudice to the grantee, he may still assail it."

Assuming that the conversations really happened as alleged, and for the purpose of this case assuming that the alleged statements of Armstrong were sufficient to constitute an assent, still they can only be an assent to those facts of which he had knowledge at the time. There was no information disclosed in the conversation as to the purchase price of the fixtures or the value thereof, or the agreement that same were to remain in the possession of Burke until the first of the succeeding month. In the absence of knowledge of these facts, defendant could not be estopped, because it could not consent to something of which it had no information. The fraud in this transfer which renders it void under the statute was the retention of possession by the vendor. Defendant knew nothing of this fact, and could not have consented to it for that reason. Neither does it appear that defendant knew plaintiff was purchasing said fixtures at about 30 cents on the dollar. Defendant could not have prevented a sale for a valuable consideration accompanied by change of possession, had he desired. Burke had an absolute right under the law to sell and dispose of his property if done in good faith and upon a valuable consideration, and all that could be said of the first conversation was that defendant might be held to have assented to an honest sale in compliance with law for a good and valuable consideration, accompanied by an actual, open, and notorious change of possession; and, if afterwards it learned that such a sale had not been effected, it would not be estopped to attack its validity for that reason. See *Porter v. Goudzwaard,* 162 Mich. 158, 127 N. W. 295; *Cole v. Tyler,* 65 N. Y. 73.

As to the second conversation, the sale at that time had already been perfected and the consideration paid. Defendant at that time did not know of the circumstances surrounding the sale nor the want of a change of possession, and cannot be held to have assented thereto; neither can an estoppel be based upon this conversation, for the reason that plaintiff parted with nothing upon the strength thereof nor did any act or placed himself in any position other than had already been done previous to that time. It is the very essence of an estoppel that the person claiming its benefits was induced thereby to do the things he did, and one who has not altered his situation in reliance upon the conduct or statement urged cannot predicate an estoppel thereon. See: 16 Cyc. 742; *Marquette Saving Bank v. Koivisto,* 162 Mich. 554, 127 N. W. 680; *Porter v. Goudzwaard,* 162 Mich. 158, 127 N. W. 295; *Scott et al. v. Signal Oil Co.,* 35 Okla. 172, 128 Pac. 694.

As soon as defendant learned of the sale the attachment was sued out and levied and there was no delay upon its part, plaintiff was not misled or injured by its failure to act, and the second conversation after the sale was made does not amount to an assent to the sale so as to defeat defendant's right to question it, nor can plaintiff urge same as an estoppel against defendant.

For the reasons given, the judgment is reversed.

All the Justices concur.