[No. 20798.   Department Two.   September 5, 1928.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE
MANOS, *Appellant*.[1]

*Robertson, Paine & Schaaf,* for appellant.

*Chas. W. Greenough* and *Louis F. Bunge,* for respondent.

[1]Reported in 270 Pac. 132.

MAIN, J.—George Manos, and a number of others, were charged by information with the crime of being common gamblers. The trial resulted in a verdict of guilty as to Manos alone. He moved in arrest of judgment, and also for a new trial, both of which were overruled. Judgment was entered upon the verdict, from which he appeals.

A summary of the facts will be necessary to an understanding of the questions of law presented. The appellant was the lessee of the second floor of a building in the city of Spokane, known as 328½ West Main avenue, and paid the rent therefor. The second floor of the building was reached by means of a stairway which entered into a room in which there were tables and chairs. On the east side of this room was a lunch counter. In the northeast corner was an office. There was a door from the end of the lunch counter into the office, and also one on the north side thereof which entered into a back room. This latter room also could be entered by a door from the first room mentioned which opened into a short hall and then into the back room. In the southwest corner of the office was a safe. Against the north wall was a roll top desk. The upper part of the west wall of the office was glass which was heavily curtained. Near this was placed a stool from which entrance into the first room mentioned and entrance into the hall could be observed. In front of the stool were two buttons which had the appearance of push buttons.

On the evening of December 28, 1926, the sheriff of Spokane county, together with a number of his deputies, raided the place. They sought to gain admission to the back room through the door that entered into the hallway which was locked. This they broke down and entered the back room. At this time there were fifty or sixty men therein, and various gambling

games were in progress, or had been in progress. When the officers entered, there was great confusion in the room. Cards and dice were being used, and money was seen upon the tables or some of them. In the safe, the officers found fourteen boxes of playing cards, a dozen decks to each box, and eleven boxes of poker chips. On the desk in the office, were a number of letters addressed to George Manos, the appellant, but which were unopened. One witness upon the trial testified that, upon two occasions, he had seen the appellant cross the back room while gambling was in progress, go to the toilet and return. The appellant was not present when the raid was made, and was arrested on the morning of December 31, 1926, when he alighted from a railway train which had just arrived from Portland, Oregon. He had been absent from the state for a period of approximately two weeks.

The first question is whether a telephone conversation was properly admitted in evidence. Two or three days before the raid, a lady called the place by telephone and someone answered the call stating that he was George Manos. The purpose of this evidence was to establish ownership and the appellant's connection with the place. This testimony should not have been admitted. The witness did not know the voice of the appellant and there was no other identifying evidence. In *Planters' Cotton Oil Co. v. Western Union Telegraph Co.*, 126 Ga. 621, 55 S. E. 495, it was said:

"The stenographer attempted to deliver over the telephone the message intended to be transmitted. He did not see or otherwise recognize the person to whom he was speaking over the telephone, and it was impossible for him to say in fact that he was conversing with the agent of the defendant. He did not know even that he was talking into any telephone in the office of the defendant. His whole information upon that point was based upon hearsay evidence, which, although ad-

mitted without objection, was incompetent to prove the fact. See *Eastlick v. Southern Ry. Co.*, 116 Ga. 48, 42 S. E. 499. The telephone operator may not have connected him with the Western Union office. If such connection was in fact made, the higher and better evidence would have been the testimony of the operator of the telephone company. There is no proof that the person who answered the plaintiff's agent at the other end of the line was the defendant's agent. The sayings of that person, under the repeated rulings of this court and the well-settled law, would not be admissible against the defendant until the fact of agency had been established. There was nothing, therefore, to show that the plaintiff's stenographer communicated with either the telegraph office or any agent of the defendant in that office.''

In *Young v. Seattle Transfer Co.*, 33 Wash. 225, 74 Pac. 375, 99 Am. St. 942, 63 L. R. A. 988, this court, on the admission of telephone communications, observed:

''When material to the issues, communications through the medium of the telephone may be shown in the same manner, and with like effect, as conversations had between individuals face to face, but the identity of the party sought to be charged with a liability must be established by some testimony, either direct or circumstantial. It is not always necessary that the voice of the party answering, or of either party, for that matter, be recognized by the other in such conversations, but the identity of the person or persons holding the conversation, in order to fix a liability upon them or their principals, must in some manner be shown. To hold parties responsible for answers made by unidentified persons, in response to calls at the telephone from their offices or places of business concerning their affairs, opens the door for fraud and imposition, and establishes a dangerous precedent, which is not sanctioned by any rule of law or principle of ethics of which we are aware. A party relying or acting upon a communication of that character takes the risk of

establishing the identity of the person conversing with him at the other end of the line.''

In *State v. Benson,* 144 Wash. 170, 257 Pac. 236, it was said that the court regarded the admission in evidence ''of a telephone message from some unidentified person as highly prejudicial and erroneous under the hearsay rule.''

The case of *State v. Peterson,* 109 Wash. 25, 186 Pac. 264, 8 A. L. R. 652, is different in that there there was evidence connecting the defendant with the transaction and the telephone communication was one of the circumstances of the transaction.

In *Beeler v. Pacific Fruit & Produce Co.,* 133 Wash. 116, 233 Pac. 4, there was evidence tending to connect the defendant with the telephone conversation to the introduction in evidence of which it objected.

In the present case, the telephone communication cannot be said to be one of the circumstances leading up to the transaction and there is no evidence of identification.

The second question is whether there was error in admitting certain telegrams in evidence. One telegram bore date of December 25, 1926, and was an inquiry directed to a Chicago house with reference to articles which would be useful in connection with gambling operations; also a reply to this telegram and a receipt from the telegraph company to George Manos for money deposited in payment of the order. The first telegram mentioned was signed George Manos. The one from the Chicago house was found in the desk in the office when the raid was made. There was no evidence that the telegram signed with the appellant's name was written by him or was in his handwriting. Neither was there any evidence that it had ever been in his possession or seen by him. The tele-

gram from the Chicago house, found on the desk, was not evidence that Manos was conducting the place, because this was only in response to the other telegram which purported to be signed by the appellant and gave the address as 328½ Main avenue, Spokane, Washington. There was no evidence that the receipt mentioned was ever delivered to or seen by the appellant.

The question is whether these documents were sufficiently identified to justify their admission in evidence. A telegram is not admissible in evidence in the absence of proof of its authenticity, either by proof of the handwriting where the original message is offered or by other evidence connecting the purported sender with it. In *Drexel v. True,* 74 Fed. 12, it is said:

"The defendants offered in evidence two telegrams, one purporting to be sent by the defendant in error Park Godwin, and the other purporting to be sent by S. Zeimer & Feldstein to Park Godwin. The defendant in error objected to the introduction in evidence of these telegrams, and the court excluded them. Waiving the consideration of other objections to their introduction, it is enough to say the defendants did not lay, or offer to lay, any foundation for their introduction. They did not show, or offer to show, that they were sent by the parties by whom they purported to be sent, or that they were received by the parties to whom they purported to be addressed. No offer was made to authenticate them in any manner whatever, and their genuineness was not admitted. They were, therefore, properly rejected." (Citing authorities.)

In *Sprinkle v. United States,* 150 Fed. 56, it was held that, where a number of persons were jointly charged with an offense, a typewritten letter purporting to have been dictated by one of the defendants and signed in his name by a rubber stamp or stencil, no part of which was in his handwriting, was inadmissible as

against him, in the absence of other evidence sufficient to connect him with the offense charged.

The fact that the responding telegram from the Chicago house was found in the desk in the office of the appellant does not make a sufficient identification or connection of the appellant with the transaction to sustain the introduction of the telegrams and receipt in evidence.

In *People v. Manganaro,* 218 N. Y. 9, 112 N. E. 436, it was said:

"Under the evidence and the defense, the writing was not competent evidence unless it was written by the defendant, and written, as stated by the counsel for the people, 'shortly before or shortly after the homicide.' The trial justice, in reaching his decision, was bound by the relevant rules of evidence and law. It was not admissible unless and until sufficient evidence had been presented, either direct or circumstantial, to legitimately satisfy him that the defendant was its author. It is a fundamental rule that, in general, all private writings must be proved to be genuine before they are admissible in evidence. The genuineness may be proved by indirect or circumstantial evidence the same as many other facts; but the circumstantial evidence, in the present case, and as a general rule, must be of such a force and character that defendant's authorship of the writing can be legitimately deduced from it. It must, with reasonable and natural certainty and precision, compel the conclusion that defendant wrote the document, and exclude the conclusion that it was the product of another. It must force or induce the mind to pass beyond a suspicion or conjecture that the defendant was the author. Suspicion is not proof, nor conjecture, evidence, upon which courts can act in determining the rights of parties. The writing was not found in the possession of the defendant. The evidence does not prove when or how or by whom it was placed upon the dresser. Neither the fact that the name of the defendant was written at its end, nor the fact that it was found in the room which

the defendant had occupied, created the presumption that he was its author. The proof did not authenticate it, and its admission in evidence was error." (Citing authorities.)

The case of *State v. Potts,* 239 Mo. 403, 144 S. W. 495, is distinguishable in that there the defendant was immediately connected with the gambling transaction. It appears from the opinion that he supplied money to the dealer, carried money from the dealers at the tables to the saloon below, acted as dealer at one of the tables on one occasion and that the dealers went to him for information. The court in that case simply held that there was sufficient connection of the defendant established with the carrying on of the gambling to sustain the introduction of poker table covers in evidence upon which were stamped the defendant's name.

The case of *State v. Dilley,* 44 Wash. 207, 87 Pac. 133, is different from that now before us. There the letter in question was seen falling from an upper room in the jail building where the purported writer was confined, and there was no one else in the room at the time, and it was held that the writing was sufficiently identified.

As already pointed out, there was nothing in the present case to connect the appellant with the telegram and the giving of the receipt. This evidence should have been rejected. Its admission was prejudicial error.

It is next contended that the evidence was not sufficient to take the case to the jury. Little need be said upon this question. The facts above stated, to which some other details might be added, were sufficient to connect the appellant with the gambling games as owner or manager. The question was one for the jury.

The next question is whether the court erred

in refusing a requested instruction which submitted to the jury the lesser offense of knowingly permitting gambling on one's premises.

Rem. Comp. Stat., § 2469, in part provides that every person who shall open, conduct or carry on, or operate, as owner or manager, any gambling game or game of chance, shall be a common gambler and upon conviction be punished by imprisonment in the penitentiary. Section 2474 provides, among other things, that every person in possession or control of a building, who shall knowingly permit gambling to be conducted therein, shall be guilty of a gross misdemeanor.

By the requested instruction, it was the desire of the appellant to have submitted to the jury the lesser offense, it being a gross misdemeanor. The situation here presented is closely analogous to that which was before the court in *State v. Chin Kee Woy*, 147 Wash. 194, 265 Pac. 460, where there was considered a similar question with reference to the unlawful conducting of lotteries. It was there held that the lesser offense of selling lottery tickets was not necessarily included in the charge of the graver offense of contriving, proposing or drawing a lottery as defined by another section of the statute. It was there said:

"These considerations, we think, also lead to the conclusion that the felony of contriving, proposing or drawing a lottery or assisting therein does not necessarily include the misdemeanor of selling, giving, furnishing or transferring lottery tickets, though the two offenses belong to the same class of crimes, and, it may be assumed, might be charged in separate counts in one information, as prescribed by ch. 109, Laws of 1925, Ex. Sess., p. 168, Rem. 1927 Sup., § 2059. The fact remains, however, that the language of this information does not include a charge of the misdemeanor of selling, giving, furnishing or transferring lottery tickets. Therefore, it seems to us that there is not here a question of awarding appellants a new trial,

looking to their re-trial for the misdemeanor of selling lottery tickets; but the sole question is whether or not the evidence sustains the felony charge, verdicts and judgments rendered in this case."

The question here presented was not involved in *State v. Louie,* 139 Wash. 430, 247 Pac. 728, where it was held to be error for the trial court to instruct that a person who permitted a lottery to be operated in a building owned by him was guilty of the crime there charged, which was that of contriving, proposing and drawing a lottery or assisting in so doing.

The lesser offense of permitting a building to be used for gambling purposes is not necessarily included in the offense of opening up, conducting, carrying on or operating a gambling game. The situation presented by the gambling and the lottery statute is exactly similar. The court correctly refused the requested instruction.

Finally it is contended that the court erred in giving instruction 13. This instruction was in accordance with the law as stated in *State v. Godwin,* 131 Wash. 591, 230 Pac. 831, and it was not error to give it.

For the reasons above stated, the judgment will be reversed and the cause remanded with direction to the superior court to grant a new trial.

FULLERTON, C. J., FRENCH, ASKREN, and HOLCOMB, JJ., concur.