[No. 15489. Department Two. December 15, 1919.]

THE STATE OF WASHINGTON, *Respondent,* v.
INEZ PETERSON, *Appellant.*[1]

FALSE PRETENSES (16)—EVIDENCE—SUFFICIENCY. In a prosecution for attempted larceny by false pretenses in a telephone order for goods, accused's connection with the person telephoning is sufficiently shown by her attempt to receive the goods at the appointed place, together with her subsequent explanations and behavior.

SAME (4) — DEFENSES — ATTEMPT UNSUCCESSFUL. A prosecution for attempted larceny by false pretenses in a telephone order for goods does not fail because the attempt was unsuccessful.

SAME (13)—EVIDENCE—ADMISSIBILITY. In a prosecution for attempted larceny by false pretenses in a telephone order for goods, evidence of the telephone conversation is admissible as part of the transaction, regardless of the fact that its probative effect depended upon the evidence to connect the accused therewith.

[1]Reported in 186 Pac. 264.

INDICTMENT AND INFORMATION (104) — CONVICTION OF ATTEMPT.
Under Rem. Code, § 2263, one informed against for larceny by false
pretenses may be convicted of an attempt to commit the offense.

Appeal from a judgment of the superior court for
King county, Smith, J., entered May 3, 1919, upon a
trial and conviction of larceny. Affirmed.

*Howard O. Durk,* for appellant.
*Fred C. Brown* and *John A. Frater,* for respondent.

FULLERTON, J.—The appellant was accused, by in-
formation, of the crime of larceny, and upon a trial
before a jury, was convicted of an attempt to commit
the crime of larceny. From the judgment and sentence
pronounced upon the verdict, she appeals.

The evidence tended to show the following facts:
On December 24, 1918, some woman called by telephone
the merchandise store of McDougall & Southwick, in
the city of Seattle, and, representing herself to be
Mrs. Edgar Ames, a person whom the employees of the
store knew to be the wife of a member of a shipbuilding
company of the city named and a credit customer of
the store, stated that she desired to purchase and have
sent to the wife of a sick employee of the shipbuilding
company certain merchandise as a Christmas present.
She further stated that the person for whom the
goods were intended lived out of the city of Seattle
near the town of Kent, and inquired whether delivery
could be made to her there. She was informed that
the delivery wagons of the store did not go to Kent,
but as a special favor to her, if she desired it, a wagon
would be sent out to make the delivery on Christmas
morning. The woman speaking then said that there
was a Miss Ellenberger employed in the office of the
shipbuilding company who lived at Kent, and that she
thought possibly she might induce her to take the

package out to Kent, and would call the store up later and let them know. She then inquired the name of the person speaking, and being given the name, closed the telephone. Later on, she again called the store and inquired for the person with whom she had previously talked. On being put in communication with him, she informed him that Miss Ellenberger had consented to take the package and would receive it at the interurban depot at four o'clock. The person answering for the store was the superintendent, and he desired her to give the place and number of the telephone at which she then was, also her home address, saying he would later put her in communication with the mail order department of the store, from which her order could be more conveniently given attention. She gave her then location as the Y. M. C. A. building, the telephone number of the place from which she was speaking, and the telephone number of her home, but stated that she objected to waiting, as she was very busy and desired to give the order immediately. The superintendent at once recognized that the numbers given were not the numbers of the telephones at the places indicated, but nevertheless put her in communication with another employee of the store, where an order was given for merchandise appropriate for women's wear, amounting to $26.10. Both the superintendent and the employee taking the order reached the conclusion that it was not Mrs. Ames who had given the order, and later on Mrs. Ames was called, when the fact was positively ascertained. The goods ordered were packed and, at the appropriate time, sent to the depot named by a young man connected with the delivery department of the store. In the meantime the police department of the city was communicated with and detectives were sent to the depot to arrest the person who should receive the package. When the messenger reached the

depot, he sought to deliver the package to the station agent. The agent declined to receive it, when the appellant approached the counter and, to paraphrase the language of the messenger, snatched the package out of his hand. Just then the appellant discovered the presence of the city detectives, when she dropped the package and walked back to a seat in the depot. She was then arrested and taken to the police station. The evidence also goes somewhat minutely into the conduct of the appellant after her arrest, both at the depot and at the police station. This we shall not detail. Its tendency was to connect the appellant with knowledge of the telephone messages given the employees in the store earlier in the day.

It is the appellant's first contention that the evidence fails to connect the appellant with the person who ordered the merchandise over the telephone. There was no direct evidence of the fact, it is true, but the indirect evidence, to our minds, hardly leaves the matter in doubt. Her conduct at the time of the attempted delivery to the station agent, her subsequent explanations, and her behavior generally, all tended to show that she was either the person who telephoned, or that she had intimate knowledge of the act and the purpose sought to be accomplished thereby. Either conclusion would justify the verdict of the jury.

A further contention is that the facts shown do not constitute an attempt to commit a crime. The argument is that, since the employees of the store were not deceived by the false pretense, and since they did not part with the goods because thereof, there would have been no crime of larceny had the appellant procured the goods from the messenger and carried them away, since the rule is there can be no attempted crime in cases where there could be no crime if the attempt had been successful. But this argument overlooks the fact

that the attempt to deceive by the telephone order is as much a part of the offense as was the attempted taking and asportation of the goods at the depot. Had the ruse succeeded in its entirety, there would have been a consummated offense, and it does not follow from the fact that the employees of the merchandise house were not deceived there is taken away from the transaction the element of attempt to deceive.

A further contention is that the court erred in admitting evidence of the telephone conversation, and erred in refusing to strike the evidence on a subsequent motion made to that effect. The objection is that the appellant was in no way connected with the conversations. Our conclusion to the effect that the evidence does sufficiently connect the appellant with the conversations is probably a sufficient answer to the objection, but the evidence was properly admitted in any event. It was a part of the circumstances of the transaction, necessary to an understanding thereof, and as much entitled to be shown as any other circumstance connected therewith. Its probative effect to establish the appellant's guilt depended upon the evidence connecting her therewith, but it was admissible regardless of this question.

As explanatory of the case as a whole, it may be proper to add that the offense of obtaining money or property by false pretenses is now denominated larceny by the criminal code (Rem. Code, § 2601), and that, under the express provisions of the same code, a person informed against for a consummated offense may be convicted of an attempt to commit the offense (Id., § 2263).

The judgment is affirmed.

HOLCOMB, C. J., MOUNT, TOLMAN, and BRIDGES, JJ., concur.