Commonwealth, Appellant, *v.* Johnson.

Argued March 28, 1933. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, and DREW, JJ.

*James A. Geltz,* Assistant District Attorney, with him *Andrew T. Park,* District Attorney, and *George F. P. Langfitt,* First Assistant District Attorney, for appellant.—In order to constitute an attempted false pretense, the false representation need not be such as is calculated to deceive and impose upon a man exercising ordinary caution and prudence: Com. v. Henry, 22 Pa. 253; Com. v. KoEune, 69 Pa. Superior Ct. 176.

There can be a false pretense where the prosecutor knows of the falsity of the representations but is acting for the purpose of entrapping the defendant: Com. v. Wasson, 42 Pa. Superior Ct. 38; Campbell v. Com., 84 Pa. 187; Com. v. Brown, 54 Pa. Superior Ct. 439.

*W. H. Coleman,* with him *Robert M. Ewing,* for appellee.—There can be no conviction of false pretense where the prosecutor knows of the falsity of the representation: Com. v. Mann, 86 Pa. Superior Ct. 464; Com. v. Miller, 22 Pa. Dist. Rep. 686; Com. v. Herman, 15 Phila. 386.

Where the act if consummated would not constitute the crime, there can not be an indictment for attempt.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1933:

Defendant was charged in an indictment with attempting to obtain money by false pretenses. He was convicted and sentenced. On appeal to the Superior Court, judgment against him was arrested and he was discharged. Because of the fundamental questions of criminal law which the record presents, we allowed an

appeal by the Commonwealth. These questions are: (1) Is the crime of attempting to obtain money by false pretenses committed where the prosecutor knows that the pretenses are false? (2) Can a conviction be sustained where the defendant receives a part of the money which he sought to obtain by false pretense; does this make the crime a completed one instead of an attempt?

Defendant is a regularly licensed practicing physician. The prosecutor is a county detective of Allegheny County. It is apparent that defendant had been practicing his profession in a way that attracted the attention of the police authorities. Drexler, the prosecutor, and another called upon defendant and represented to him that they had a sister (which was not the fact) who was failing in health. Defendant told the prosecutor to write her name on a piece of paper. The prosecutor accordingly wrote the fictitious name. Defendant placed this paper on the knob of what was apparently an electrical instrument and rubbed it. Having done so he informed the prosecutor that he found his sister had been suffering from sarcoma. He rubbed again several times and then informed his visitors that the sister had a blood clot on the brain, that she had beef worms, that she was anemic and that her gall duct was in good condition. The prosecutor then stated that he would bring his sister in to see defendant, who replied that he did not think it necessary, that he had patients he had never seen who were taking his treatment and being cured, that he had just received a telegram from Europe informing him that his treatments had helped a woman to give birth to a child and that he had patients in England, France, South America, India and Africa, and practically all over the United States. Defendant asked from his visitors for treating their supposititious sister a fee of $65 a month for a period of from nine to twelve months if they were financially able to pay it, and if not, of $41.60 a month. Thereupon the prosecutor and his ally departed promising to return, which they did in

a few days, told defendant they had decided to take the $65 treatment, and paid him on account $25 in marked bills, promising the remainder later. They then left defendant's office and shortly thereafter two other county detectives entered and arrested him, finding the marked bills in his possession.

It was testified that the instrument in the defendant's office on which he had placed the handwriting and which he had rubbed for the apparent purpose of diagnosing the supposed sister's ailments was found on investigation not to be wired to any electric current.

Textbook authorities are apparently in unison on the proposition that the completed crime of false pretense is not established unless it appears that the person alleged to have been defrauded believed the false representations to be true. Thus in Wharton's Criminal Law, volume 2, 11th edition, section 1447, page 1629, it is said: "It is an essential ingredient of the offense that the party alleged to have been defrauded should have believed the false representations to be true, for if he knew them to be false, he cannot claim that he was influenced by them." In Clark's Handbook of Criminal Law, 3d edition, page 368, it is stated: "Not only must there be a false pretense made with intent to defraud, but the prosecutor must part with the property relying on the pretense. If, therefore, he knows that the pretense is false when he parts with the property, the offense is not committed." In 25 C. J., page 589, the completed crime is thus defined: "A criminal false pretense may be defined to be the false representation of an existing fact, whether by oral or written words or conduct, which is calculated to deceive, intended to deceive, and does, in fact, deceive, and by means of which one person obtains value from another without compensation."

It is argued in the defendant's behalf that, as he could not have been legally convicted of the consummated offense had he done everything he intended to do, because

the prosecutor was not deceived, he cannot be lawfully convicted of the attempt. To sustain this position, we are referred to 16 C. J. 117; People v. Jaffee, 185 N. Y. 497, 9 L. R. A. (N. S.) 263, 7 Am. Cas. 348; 1 Bishop's Criminal Law, 7th edition, section 747.

We assume that there are many instances in which there can be no conviction of an attempt to commit a crime, where, if the project had been fully carried out, no crime would have been consummated, but we think this rule does not apply to attempts to commit the crime of obtaining property by false pretense where the prosecutor was not deceived, because he knew when the attempt was made that the representation was false. The law on the subject, with authorities to sustain the text, is thus summed up in 25 C. J., page 614, section 46: "An attempt to commit the crime of obtaining money by false pretenses or the like is an indictable offense. Such an attempt consists in: (1) An intent to obtain by the false pretense, or the like; (2) the doing of some act, toward obtaining the property by means of the false pretense, or the like; (3) the failure so to obtain the property. It is not necessary that the prosecutor should have relied upon the false pretenses and parted with his property. But on the contrary, if property is actually obtained in consequence of the prosecutor's reliance upon the false pretenses, the offense is complete and an indictment for an attempt will not lie......If accused with the requisite intent has done some act toward obtaining the property, it is none the less an attempt because for some reason unknown to him he could not have completed the crime, or because the falsity of his representations is discovered before he has an opportunity to proceed further in his endeavor to obtain the property." The text is supported by the following illustrations: (1) A person falsely pretended to a pawnbroker that a chain was silver. The pawnbroker, without relying on the prisoner's statement, but upon his own examination and test, lent him ten shillings on the

chain which was made of a composition worth about a farthing an ounce. It was held that while not guilty of the substantial offense, he committed the offense of attempting to obtain money by false pretenses: Reg. v. Roebuck, 7 Cox's Criminal Cases 126. (2). Where the accused called up a store and fraudulently arranged for the delivery of goods to herself in the name of a credit customer, she was guilty of an attempt to commit larceny by false pretenses, although the employees of the store were not deceived, and made arrangements for the apprehension of accused when the delivery should take place, the attempt to deceive by the telephone order having been as much a part of the offense as was the attempted taking of the goods on delivery, which failed: State v. Peterson, 109 Wash. 25, 186 Pac. 264. (3) A man went into a pawnbroker's shop and laid down eleven thimbles on the counter, saying, "I want five shillings on them." The pawnbroker's assistant asked the man if they were silver and he said they were. The assistant tested them and found that they were not silver, and in consequence did not give any money, but sent for a policeman and gave the man into custody. It was held that this was an attempt to commit the offense of obtaining money under false pretenses: Reg. v. Ball, 1 C. & M. 249, 41 E. C. L. 140.

The classic instance of an attempt to commit a crime which is in fact impossible, due to some extraneous circumstances beyond the control or knowledge of the defendant, is that of the pickpocket who seeks to pick the pocket of an impecunious person. It was first held in England that no conviction for an attempt could lie under such circumstances: Reg. v. Collins, 169 Eng. Reprints 1477. This case was overruled in Reg. v. Brown, 16 Cox's Criminal Cases 715, and Reg. v. Ring, 17 Cox's Criminal Cases 491.

In Rogers v. Com., 5 S. & R. 462, it was held that an indictment for an assault with the intent to steal from the pocket was sufficient, although it failed to state that

there was any money in the pocket. In other states the ruling has been that a conviction for an attempt to commit larceny will lie where there is no money in the pocket of the prosecutor: Com. v. McDonald, 59 Mass. 365; State v. Wilson, 30 Conn. 500; People v. Jones, 46 Mich. 441; and for an attempt at burglary where there was no money in the house: State v. Beal, 37 Ohio 108; for an attempt to steal from a cash register though there is no money in the drawer: Clark v. State (Tenn.) 8 S. W. 145. On the contrary, it has been held there can be no attempt to commit the crime of receiving stolen property where in fact the property is not stolen: People v. Jaffee, 185 N. Y. 497.

In People v. Gardner, 144 N. Y. 119, 38 N. E. 1003, the defendant was indicted for an attempt to commit extortion. In New York, an essential element of the full crime is that the victim part with the money under the influence of fear. In that case, the prosecutrix was in fact a decoy of the police and was not put in fear by the defendant. After conviction, the defendant appealed to the general term of the Supreme Court and it was there held that no attempt had been committed. (It is interesting to note that many text writers have cited the opinion of the general term as expressing the law of New York.) Upon appeal to the Court of Appeals, the judgment was reversed, that court holding that the attempt was complete, saying, "the question whether an attempt to commit a crime has been made is determinable solely by the condition of the actor's mind, and his conduct in the attempted consummation of his design." In Reg. v. Francis, 12 Cox's Criminal Cases 612, the prisoner was indicted for an attempt to obtain money by false pretense. The evidence showed that he had presented a ring to a pawnbroker, stating that it was a real diamond. The latter recognized the falsity of the jewel and refused to lend money. The defendant was then apprehended and his trial resulted in a verdict of guilty, which on appeal was affirmed.

A similar case arose later, with the exception that the defendant there attempted to obtain money upon a false bank note. The conviction was affirmed by the court of Appeals: Reg. v. Jarman, 14 Cox's Criminal Cases 111.

All of the English authorities seem to be in accord in holding that the fact that the prosecutor is not deceived does not prevent a conviction for an attempt at false pretense.

In State v. Wilson, 30 Conn. 500, page 506, it is said: "Indeed, upon principle, it would be a novel and startling proposition, that a known pickpocket might pass around in a crowd, in full view of a policeman, and even in the room of a police station, and thrust his hands into the pockets of those present with intent to steal, and yet not be liable to arrest or punishment, until the policeman had first ascertained that there was in fact money or valuables in someone of the pockets on which the thief had experimented. The statement of such a proposition is a sufficient refutation of it; and the only safe rule is, that the attempt is complete and punishable when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption, or because there was nothing in the pocket, or for other extrinsic cause."

In the instant case, there was no legal impossibility of consummating the offense, only a factual impossibility—the failure to deceive the intended victim. In such a case, the requisite intent is present. The means are adapted to the end, and the purpose of the criminal laws being to protect society against those whose intentions are to injure it or its members, no sound reason exists why an attempt such as that here made, the purpose of which was by means of pretensions which were false to obtain money, should not lead to punishment Certainly the situation is well within our definition of an attempt as stated in Com. v. Crow, 303 Pa. 91, 98:

"An attempt is an overt act done in pursuance of an intent to do a specific thing, but falling short of completion: Com. v. Eagan, 190 Pa. 10; or as defined in 8 R. C. L. 277: 'An indictable attempt, therefore, consists of two important elements: first, an intent to commit the crime; and, second, a direct ineffectual act done towards its commission. It will be observed that a failure to consummate the crime is as much an element of an attempt to commit it as the intent and the performance of an overt act towards its commission.' " If this were held to be no attempt because there was no deception, then criminals of this kind, committing this offense, which is a subtle form of larceny, could go on plying their illicit trade, until they find a dupe, and would thus have a favored status in the law over other thieves.

We think the legal conclusions summed up by Bishop in his Criminal Law, 9th edition, volume 1, section 752, should cover the field in cases of this kind: "Where the nonconsummation of the intended criminal result is caused by an obstruction in the way, or by want of the thing to be operated upon, if such impediment is of a nature to be unknown to the offender, who used what seemed appropriate means, the punishable attempt is committed."

Turning briefly to the position assumed by the Superior Court, that the representations were not such as to deceive a man of ordinary understanding, it is sufficient to say that the reason for creating the crime of false pretense is to protect not the shrewd and capable but the simple and gullible from the designs of those who live by preying upon the ignorance of the public. The principle was re-announced in Pennsylvania in Com. v. Henry, 22 Pa. 253, where it was said (page 256): "Nor is it less a false pretense because the party imposed upon might, by common prudence, have avoided the imposition." This principle was re-affirmed in Com. v. KoEune, 69 Pa. Superior Ct. 176, from which we

quote this language (page 181): "The statute was not enacted for the protection of the shrewd and capable only......It is, of course, conceivable that a pretense might be so trifling or absurd as to warrant a court in saying that it was not calculated to deceive but where the pretense is such as might well mislead the confiding and unwary a fraud ought not to be ignored because care and circumspection were not exercised by the person imposed on."

A further contention advanced by the appellant is to be considered. He argues that he could not be lawfully convicted of the attempt because in fact he received $25 from the prosecutor. His contention in this respect is unavailing. His purpose was to obtain a greater sum, not only to obtain it at the time he made the representation, but to obtain sums of money in the future from the prosecutor as a result of his false pretension. His attempt to obtain the larger and further sums remains an attempt, notwithstanding he received part of the money he was endeavoring to collect.

The judgment of the Superior Court is reversed and the judgment of sentence of the court of quarter sessions is reinstated.

DISSENTING OPINION BY MR. JUSTICE MAXEY: .

The question here is not whether defendant's fraudulent holding himself out as a medical miracle worker should be punishable by law. That question could properly engage the attention of the legislature. The question here is whether or not the Commonwealth made out a case of criminal attempt. The law of attempts is well settled and its logic is clear. The few cases cited by the Commonwealth in support of its position are cases in which this logic has been departed from in order to lay the lash of the law on those whose states of mind marked them as possible criminals. The criminal law of the United States was never intended to punish states of mind except when they resulted in sub-

stantial overt acts. The offense of "imagining the king's death" was not recognized in this country even in colonial days. The logic involved in the offense of "imagining the king's death" is that there may be a crime without an overt act. It is the same logic that is behind the doctrine of constructive treason and this logic has led to some of the most shameful prosecutions, convictions and executions in English history. Sir Matthew Hale said: "Almost every offense that seemed to be a breach of allegiance to the king was by construction raised into the offense of high treason": 2 Hale, Pleas of the Crown (1847 edition) section 1, 80, 82. Algernon Sidney was charged with treason and executed because he merely committed to his own unpublished private papers his ideas of the desirability of a different form of government. "This decision was based on the theory that to write is to commit an overt act": Foster, Crown Law (1767) 198. One of John Marshall's greatest contributions to our jurisprudence was to "outlaw" (in the trial of Aaron Burr) the crime of constructive treason, which was based only on a state of mind. Albert J. Beveridge in "The Development of the American Constitution Under John Marshall," Texas Law Review, October, 1926, pages 106, 109, well says of this: "By that series of opinions [in the Burr case], John Marshall forever overthrew the cruel, brutal, inhuman, illogical British and European doctrine of constructive treason, and established in place of it the humane, reasonable, American doctrine of actual and personal treason. Careful scholars have estimated that, during our Civil War, those opinions of Chief Justice MARSHALL saved the lives of thousands of innocent men and women who otherwise would have been sacrificed to the passions of war."

In the case before us the prosecution is based on a state of mind. The defendant's preposterous statement of the cure he could effect, when made to the detective who knew it was preposterous and untrue, was, from

the standpoint of sound legal logic, as harmless as Algernon Sidney's unpublished ideas on government. The defendant's state of mind was not followed by any substantial overt act which took the defendant *a single step* nearer the consummation of his imagined crime than he was when the criminal intent was conceived. When A lies to B and B knows it, A's lie is (except when the lying is done under formal oath and on a material matter) a triviality beneath the law's notice. As Justice HOLMES aptly said in Com. v. Kennedy, 170 Mass. 18, 48 N. E. 770: "As the aim of the law is not to punish sins, but is to prevent certain external results, the act done must come pretty near to accomplishing that result before the law will notice it."

The law of criminal attempts is nowhere more correctly and succinctly stated than by Wharton in Criminal Law, 10th edition, section 183: To constitute an attempt, "there must be such a preliminary overt act as may, by the course of the usual natural laws, apparently result, if not interrupted, in crime." See also Dahlberg v. People, 225 Ill. 485, 80 N. E. 310.

In the case before us the "overt act" alleged was the telling of a lie to a detective who knew he was being told a lie. In fact he invited the lie by telling the defendant that he, the detective, had a sister in ill health whereas in fact he had no sister at all. A mere unsworn to, unbelieved and therefore harmless lie does not reach the importance of an "overt act" and should not be accepted as the basis of a criminal prosecution.

The Commonwealth's chief reliance in authority is the "pickpocket cases," in which persons who feloniously put their hands into empty pockets with intent to steal the pocket's supposed contents have been convicted of attempted larceny. The answer to the pickpocket cases is twofold: (1st) The authorities are by no means unanimous that in such cases the crime of attempted larceny is made out. No less an authority than BRAMWELL, B., in Regina v. McPherson, Dean and B. 197, rejected this

doctrine though he said it "appeared to me at first plausible." COCKBURN, C. J., also agreed that a conviction could not be sustained in such a case. See 9 Cox Criminal Cases 498. See also Holmes on The Common Law, page 68. (2d) In the pickpocket cases, there is present in addition to the criminal intent a very substantial overt act, to wit, the unlawful putting of one's hand into another's pocket. This is a substantial personal trespass and is, of course, unlawful. It is in its essence as criminal as it is to enter unlawfully another's house with intent to steal something which proves to be not there. When the pickpocket follows up his criminal intent by putting his hand into his intended victim's pocket, he has done the most important act in his pocket-picking program. His program of criminal acts (in the empty pocket cases) fell just short of fruition because the last act in the chain of acts, to wit, the taking of valuables from the pocket, could not be accomplished. He had followed his criminal intent with an act substantial and unlawful, but this fell just short of attaining the result desired. What the intended pickpocket did in this case may be compared to the act of an intended murderer firing a bullet toward the heart of a man who had on a bullet-proof vest or the act of an intended maimer who fires a bullet at a man's leg not knowing that the leg was a wooden one. These cases would be respectively attempted murder and attempted assault and battery, because the criminal intents were followed by substantial overt acts to carry them out. The telling of an unbelieved lie as in the present case weighs no more in comparison with the felonious putting of one's hand into another's pocket with intent to steal than it does with the discharge of pistols in the examples just cited. The telling of an unsworn to, unbelieved lie, like maledictions or "hexing" with lethal intent belongs to the category of "trifles," with which "the law is not concerned." Even though a "voodoo doctor" just arrived here from Haiti actually believed

that his malediction would surely bring death to the person on whom he was invoking it, I cannot conceive of an American court upholding a conviction of such a maledicting "doctor" for attempted murder or even attempted assault and battery. Murderous maledictions might have to be punished by the law as disorderly conduct but they could not be classed as attempted crimes unless the courts so far departed from the law of criminal attempts as to engage in legislation. A malediction arising out of a murderous intent is not such a substantial overt act that it would support a charge of attempted murder. Likewise the silly pretension the defendant made to the detective in the case before us, a pretension which the detective totally discredited, was not such a substantial overt act that it, when added to the defendant's fraudulent intent, amounted to the crime of attempting to obtain money by false pretenses.

Nothing herein stated conflicts with the principle from 25 C. J. 614, cited in the majority opinion. No one denies that an attempt consists of (1) "an intent ......" (2) "the doing of some act, toward obtaining the property by means of the false pretense," and (3) "the failure so to obtain." In the instant case No. 2 is lacking (so is No. 3, for there was no "failure," but we will discuss that later). The telling of a silly, preposterous and unbelieved lie falls as far short of "the doing of some act toward obtaining the property by means of the false pretense" as cursing a man with murderous intent would fall short of "the doing of some act toward committing murder," if the charge was attempted murder.

Mere words cannot be considered acts of violence or fraud, in the criminal law, until they result in acts. If A makes a false pretense to B and the latter credits this pretense and starts to reach into his pocket to get something of value for A in reliance on his false pretense or starts to write a check or sign a note in reliance

upon the false pretense, and then something intervenes to prevent the fraud's reaching fruition, we have a criminal attempt, for A's words have caused an act which is a substantial link in the chain of events leading from a criminal intent to a criminal result. A's false pretense to B plus B's mental responsiveness to it and reliance upon it and B's act toward parting with something of value in reliance upon the false pretense constitute a moving forward to a completed crime, and if something then intervenes, before the crime is consummated, we have a case of attempt to obtain something of value by false pretenses. But a false pretense or lie which is immediately recognized as such and which is not acted upon at all except, as here, for the purpose of leading on and entrapping the would-be criminal is a trifle which is beneath the notice of the law defining criminal attempts. If anyone would claim ownership of the moon or of the state capitol and would make an offer to some intelligent person to sell him the moon or the capitol for $50, it would, in my judgment, be absurd to hold that he should be prosecuted for attempting to obtain money by false pretenses. Such a prosecution would bring the law itself into ridicule. If men go around offering to sell the moon or the state capitol or obviously preposterous "cures" to the gullible and if there are a sufficient number of gullibles to require the law's protection, this protection should come by way of a legislative enactment and not by way of a judicial grafting onto the law of criminal attempts an exotic which both reason and legal history say does not belong there.

It is true that the Commonwealth has cited a few cases from other jurisdictions of no controlling authority here where prosecutions for "attempts" similar to the one now before us have been sustained. Isolated "cases" can be cited in support of almost any proposition however absurd. To paraphrase slightly an ancient line: "In [law] what damned error but some sober

brow will bless it and approve it with a [case]." Occasionally some "authority" will "rush in where [reason] fears to tread."

Measured by another time-honored and universally established test the defendant's conviction cannot be sustained. To convict anyone of an attempt to commit any crime, the elements present in the attempt must, *as far as they exist at all, be the same elements that are among those present in the completed crime.* For example, there must be a criminal intent in both a certain crime and in an attempt to commit that crime. If a criminal intent is essential to a certain crime, a mere *wish* to commit that crime, *without any actual intent* to commit it would not be sufficient to sustain an indictment for an attempt to commit that crime. Likewise, since, as the majority opinion states, "Textbook authorities are apparently in unison on the proposition that the completed crime of false pretense is not established unless it appears that the person alleged to have been defrauded believed the false representations to be true," it follows that since the person whom it is alleged the defendant attempted to defraud did not believe the false representations the indictment for the attempt is not sustained by the proof. "Where the act, if accomplished, would not constitute the crime intended, as a matter of law, then there is no indictable attempt": 16 C. J., page 117, section 96.

Another fact which makes this prosecution for an *attempt* to obtain money by false pretenses appear to me to be a legal paradox is that the defendant theoretically *accomplished* whatever crime he intended (except for his failure to deceive anybody) by actually "obtaining" $25 from the detective. The fact that he expected to obtain later additional sums from the same person is utterly immaterial in this case. If a man broke into a bank with the intent to steal $1,000 or $1,000,000 and actually stole only $25 his criminal offense is exactly as complete as if he obtained the larger sum coveted. If

a man feloniously steals $1 out of a pocket where he had hoped to find $100 he is no less guilty of larceny than he would have been if he had obtained the larger sum. Therefore, if what defendant in this case did is a crime at all, it is the crime of obtaining money by false pretenses and the court should say so, and not try to designate it as something half-way between a mere criminal intent and a completed crime. Where in addition to the criminal intent there is established as the next step toward the commission of the crime intended a fact strong enough to do a substantial part in carrying the intent forward but this fact is not followed by another or by others necessary to carry the intent right up to its object, the case is one of criminal attempt. Here the defendant followed up his intent to obtain money by false pretenses only by telling an unbelieved lie. This did not amount to a fact strong enough to do a substantial part in carrying the intent forward; it did not advance the criminal intent a single iota toward its object. Defendant's criminal intent fructified only in a farce.

The majority opinion is in substance based on this proposition: When all the links in the unlawful thing a defendant planned to do are present, yet this completed chain of acts is not strong enough to support a charge of a completed crime, proof of an attempt to commit a crime is made out. This impresses me as a unique proposition, without support in reason and utterly at variance with the history and the philosophy of the law of criminal attempts. If the conviction of this defendant of an attempt to obtain money by false pretenses is sound in law, then anyone who possessed of a generally larcenous attitude of mind entraps wildcats in the common woods should be prosecuted for attempted larceny. The fact that wild cats "ferae naturae and unreclaimed" are not the subject of larceny ought not to be a bar to a prosecution for the attempted larceny of them if the fact that the "victim" named in the in-

dictment now before us was neither victimized nor had his credulity imposed on in the slightest degree by the defendant's incredible pretenses is not a bar to this one. The "victim" named was not "subject" to the particular false pretenses employed in the case because of his complete knowledge of their falsity.

I would affirm the judgment of the Superior Court.

Mr. Justice LINN having joined in the opinion of the Superior Court, took no part in the decision of this case here.