474 A.2d 1115

COMMONWEALTH of Pennsylvania, Appellee,

v.

Samuel HENLEY, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 23, 1984.

Decided April 24, 1984.

Burton A. Rose, Philadelphia, for appellant.

Eric B. Henson, Deputy Dist. Atty., Robert B. Lawler, Chief, Appeals Div. Asst. Dist. Atty., Kenneth Gallant, Philadelphia, for appellee.

## OPINION

PAPADAKOS, Justice.

This is the appeal of Samuel Henley (Appellant) from the en banc Opinion and Order of the Superior Court, *Commonwealth v. Henley*, 312 Pa. Superior Ct. 564, 459 A.2d 365 (1983), which reversed a Philadelphia Common Pleas Order sustaining Appellant's demurrer to the evidence charging him with attempting to receive stolen property.

The facts are not in dispute and can be easily summarized. Appellant is the owner of the Henley Brothers Jewelry Store located at 740 Samson Street in the City of Philadelphia. On December 22, 1980, an informant, wired with a tape recording device, was given five (5) specially coated chains by the police, and sent to Appellant's jewelry store. The informant entered the store and offered to sell the five (5) gold chains to Appellant. He represented to Appellant that the chains were stolen. Appellant, believing them to be stolen, purchased the chains for $30.00, took possession of them, and expressed a willingness to buy more stolen goods in the future. This conversation was recorded. The informant then left the store, met with the detective who had accompanied him, played the tape recording, and turned over the $30.00.

The detective then entered the store and arrested Appellant, charging him with the crime of theft by receiving stolen goods and receiving stolen property as a business. 18 Pa.C.S. Section 3925. These charges were later amended to attempted theft by unlawful taking or disposition, 18 Pa.C.S. Section 901, 3925, and he was tried on this charge at a non-jury trial on November 18, 1981.

At the conclusion of the Commonwealth's case, Appellant demurred to the evidence, arguing that the chains were not stolen property because they were in police custody, and that, therefore, he could not be found guilty of an attempt to receive stolen property which was not stolen. The trial court found this defense of legal impossibility persuasive and granted the demurrer.

The Commonwealth appealed to the Superior Court, which reversed and remanded for trial, concluding that the defense of legal impossibility had been abolished in Pennsylvania. Because this issue was one of first impression, we granted allocatur.

Impossibility defenses were usually classified as either legal or factual in nature. "Factual impossibility denotes conduct where the objective is proscribed by the criminal law but a circumstance unknown to the actor prevents him

from bringing it about. The classic example is the thief who picks an empty pocket." *United States v. Conway,* 507 F.2d 1047, 1050 (5th Cir; 1975). Legal impossibility was said to occur where the intended acts would not amount to a crime even if completed. A frequently cited case standing for this proposition is *People v. Jaffe,* 185 N.Y. 497, 78 N.E. 169 (1906). The *Jaffe* Court held that where an element of the completed crime required the goods be stolen, the fact that the goods were not stolen was a defense to the completed act. Consequently, an attempt to do an act which would not be criminal if completed could not itself be criminal regardless of the actor's intent. *See United States v. Conway.*

Factual impossibility has never been recognized as a defense to an attempt charge by any American Court, *see State v. Logan,* 232 Kan. 646, 656 P.2d 777 (1983), and this Court specifically rejected factual impossibility as a defense to an attempt charge in *Commonwealth v. Johnson,* 312 Pa. 140, 167 A. 344 (1933).

Legal impossibility had been recognized in many jurisdictions as a defense to attempt charges, and this Court cited the *Jaffe* case approvingly in *Johnson,* indicating that the defense of legal impossibility was available as a defense to attempt charges in this Commonwealth.

The reasoning in the *Jaffe* line of cases has come under considerable criticism in the last twenty-five years, and in response to the criticism the defense has been uniformly rejected by the highest courts of most states where the issue has been raised.[1] Additionally, many states have

1. The California Supreme Court repudiated the *Jaffe* Rule in *People v. Rojas,* 55 Cal.2d 252, 358 P.2d 921, 10 Cal.Rptr. 465 (1961); New York's Court of Appeals criticized its prior rule in *People v. Rollino,* 37 Misc.2d 14, 233 N.Y.S.2d 580 (1962) and requested the Legislature remedy the rule by adopting the Model Penal Code's attempt statute. The Legislature responded in 1965 with Section 110.10 of the New York Penal Laws (McKinney 1975); Colorado's Supreme Court also interpreted its attempt statute to have abrogated the legal impossibility defense, *Darr v. People,* 193 Colo. 445, 568 P.2d 32 (1977) as has the Supreme Court of Nevada, *Darnell v. State,* 92 Nev. 680, 558 P.2d 624 (1976); the Supreme Court of Minnesota, *State v. Bird,* 285 N.W.2d

passed legislation which specifically abrogated the defense.[2] The suggested abrogation of the impossibility defense through legislation was first introduced to most state legislatures via the Model Penal Code.

The Model Penal Code, drafted in 1962, represents the work of a decade of scholarly drafting, codification, and clarifications in all areas of criminal law by the American Law Institute, and has been used as a model for crimes codes throughout the United States. Section 5.01 of the Model Penal Code abandons the defense of legal impossibility with the following language:

1. *Definition of Attempt*—A person is guilty of an attempt to commit a crime if acting with the kind of culpability otherwise required for the commission of the crime, he...

2. purposely engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be:

Model Penal Code Section 5.01 (1962)

Our Legislature was keenly aware of the necessity to consolidate, amend, and revise the penal laws of the Commonwealth, and as early as 1963 began preparing legislation for a new crimes code. A joint state government commission was formed with members from both the House

481 (1979); and the Supreme Court of Kansas, *State v. Logan*, 232 Kan. 646, 656 P.2d 777 (1983).

**2.** States which have legislatively eliminated the defense of impossibility for attempt crimes include Arkansas, Ark.Stat. Section 41–701; Connecticut, Conn.Gen.Stat.Ann. Section 53a–49 (1977); Delaware, Del., Code Ann. tit. 11 Section 531 (1974); Georgia, Ga.Code Ann. Section 26–1002 (1972); Hawaii, Hawaii Rev.Stat. Section 705–500; Illinois, Ill.Ann.Stat. ch. 38, Section 8–4 (1972); Indiana, Ind.Stat.Ann. Section 35–41–5–1; Kansas, K.S.A. Section 21–3301 (1974); Kentucky, Ky.Rev.Stat. Section 506.010; Louisiana, La.Stat.Ann. Section 14.27 (1974); Maine, Maine Rev.Stat.Ann. tit. 17–a Section 152; Minnesota, Minn.Stat. Section 609.17 (1974); Montana, Rev.Code Mont. Section 45–4–103; New Hampshire, N.H.Rev.Stat.Ann. 629:1; Ohio, Ohio Rev. Code Ann. § 2923.02 (1975); Oklahoma, Okla.Stat.Ann. tit. 21 Section 44; North Dakota, N.D.Cen.Code Section 12.1–06–01; Oregon, Ore. Rev.Stat. Section 161.425 (1975); Utah, Utah Code Ann. Section 76–4–101; and Washington, Rev.Code Wash. Section 9A.28.020 (1976).

and Senate which, by 1967, had drafted a Proposed Crimes Code.

That draft specifically addressed the defense of legal impossibility in Section 5.01(a)(1) of its report. The drafters incorporated Model Penal Code Section 5.01 without change into their report and suggested its adoption by the Legislature as part of our Crimes Code. The Comment to that section regarding the intent of the proposed section directly addressed the issue as follows:

Under this section the actor must act purposely. Subsection (a)(1) makes it clear that impossibility is no defense. However, the result intended by the actor must constitute a crime.

*Proposed Crimes Code for Pennsylvania,* p. 77 (1967).

This Proposed Crimes Code was not adopted directly by the Legislature, but rather was sent to various judiciary committees for review and redrafting. The Proposed Crimes Code which reappeared in 1970 as Senate Bill 455 contained the following language concerning criminal attempt:

### SECTION 901 CRIMINAL ATTEMPT

(a) Definition of attempt—a person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward commission of that crime.

(b) Impossibility—it shall not be a defense to a charge of attempt that because of a misapprehension of the circumstances it would have been impossible for the accused to commit the crime attempted.

This draft ultimately was approved and enacted as 18 Pa.C.S. Section 901(a), (b).

Because of variance in the language of the Model Penal Code and our Crimes Code, appellant argues that the Legislature intended to reject the provision of the Model Penal Code and to retain the legal impossibility defense to inchoate crimes. We disagree. The mere fact that our Legislature improved upon the language in its Criminal Attempt

Section over that found in the Model Penal Code cannot by itself support the conclusion that the Legislature intended to reject the provisions of the Model Penal Code and thus, to retain the legal impossibility defense.

■ Our Crimes Code is clear in defining the two (2) elements of the offense of attempt by providing: (1) that the actor intend to commit an offense; and (2) that the actor take a substantial step toward completion of the offense. The Code then specifically provides that impossibility is not a defense if the completed offense could have occurred had the circumstances been as the accused apprehended them to be. Read as a whole, the provisions of Section 901(a) and (b) of our Crimes Code parallel the provisions of the Model Penal Code and other states' crimes codes (which are all based on the provisions of the Model Penal Code) in their intent if not in their terminology.[3]

Those sections have all been interpreted as eliminating the defense of legal impossibility because of statutory language to the effect that impossibility (factual or legal) is not a defense if the completed offense could have occurred

**3.** We have already cited the provisions of the Model Penal Code Section 5.01, but compare that section to the following Code sections from other states:

Kansas Crimes Code K.S.A. 21 Section 3301: "Attempt (1) An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime. (2) "It shall not be a defense to a charge of attempt that the circumstances under which the act was performed or the means employed or the act itself were such that the commission of the crime was not possible;"

New York Penal Code Section 110.10: "If the conduct in which a person engages otherwise constitutes an attempt to commit a crime pursuant to Section 110.10, it is no defense to a prosecution for such attempt that the crime charged to have been attempted was under the attendant circumstances, factually or legally impossible of commission if such crime could have ʰeen committed had the attendant circumstances been as such person believed them to be;"

Colorado Crimes Code 18–2–101(1) C.R.1973: "A person commits criminal attempt, if, acting with the kind of culpability otherwise required for commission of an offense, he intentionally engages in conduct constituting a substantial step toward commission of the offense ... Factual or legal impossibility of committing the offense is not a defense if the offense could have been committed had the attendant circumstances been as the actor believed them to be ..."

had the circumstances been as the accused *believed* them to be. Our Code's provisions are strikingly similar except that our statute speaks to the accused's *misapprehension.*

The choice in terminology between "beliefs" and "misapprehensions," however, is of no consequence since both terms would require the actor mentally or intellectually to perceive, comprehend, or accept a reality, phenomenon, or set of occurrences without regard to actual extrinsic circumstances.[4] The use of either term then is interchangeable, and the Legislature could just as easily have used words referring to the actor's "beliefs" instead of his "apprehensions" or "misapprehensions" of the circumstances.

■ In either event it appears clear to us that Section 901(b) of the Crimes Code abrogates the defenses of factual and legal impossibility to attempt crimes in clear, concise, and unambiguous language. Furthermore, the statutory language employed parallels the provisions of statutes similarly based on the Model Penal Code's language which have been held to eliminate the defense of legal impossibility.

Our legislation provides for exactly the same elements in attempt cases as do other States' Crimes Codes in a way that convinces us that both factual and legal impossibility defenses are abrogated by Section 901(b). This interpretation is also in keeping with our requirement to construe provisions of the Crimes Code "according to the fair import of their terms." 18 Pa.C.S. Section 105.

■ We are thoroughly aware of the unsound basis for the legal impossibility defense and we hasten to add that the application of either of the impossibility defenses "is so fraught with intricacies and artificial distinctions that the defense has little value as an analytical method for reaching

**4.** "Apprehension" is defined as "the act or power of perceiving or comprehending; to become aware of; to grasp with understanding; recognize the meaning of," Webster's New Collegiate Dictionary, 56 (5th Ed.1977). (Of course here we are dealing with the term in the negative). "Belief" is defined as "a conviction of the truth of some phenomenon and suggests mental or intellectual acceptance," Webster's New Collegiate Dictionary, 101 (5th Ed.1977).

substantial justice." *State v. Moretti*, 52 N.J. 182, 244 A.2d 499 (1968).

The effort to compartmentalize factual patterns into these judicially created categories of factual or legal impossibilities is but an illusory test leading to contradictory and sometimes absurd results, because courts are left to evaluate an actor's beliefs or apprehensions in the light of the actual facts. Our statute abandons this out-dated approach with its former distinctions of legal and factual impossibilities and instead evaluates the actor's conduct according to his mental frame of reference alone.

■■■ Thus, if one forms intent to commit a substantive crime, then proceeds to perform all the acts necessary to commit the crime, and it is shown that completion of the substantive crime is impossible, the actor can still be culpable of attempt to commit the substantive crime. A defense based on the old legal or factual impossibility argument clearly is no longer available. Under the new Code, an intent to commit an act which is not characterized as a crime by the laws of the subject jurisdiction can not be the basis of a criminal charge and conviction even though the actor believes or misapprehends the intended act to be proscribed by the criminal laws. An example of this is where a fisherman believes he is committing an offense in fishing on a certain lake without a license when a fishing license is, in fact, not required in the subject jurisdiction. Since the conduct here would be perfectly legal, the actor could not be held accountable for any attempted crime. In all other cases, the actor should be held responsible for his conduct. Our reading of Section 901(b) would do just that.

■■ Since the defense of legal impossibility has been abrogated, it was not available to Appellant and the demurrer was improperly granted. This matter must, therefore, be remanded to the Court of Common Pleas for trial.

The Order of the Superior Court is affirmed.

LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ., join in this opinion.

NIX, C.J., filed a concurring opinion in which LARSEN and ZAPPALA, JJ., joined.

NIX, Chief Justice, concurring.

I join the opinion and write in an attempt to further clarify an area which has proven over the years to be one elusive of satisfactory explication.

The inherent failing of the former concepts of legal and factual impossibility, aside from the difficulties encountered in attempting to make that distinction in a given factual setting, was that the use of this dichotomy tended to focus on the legal form rather than upon an evaluation of the substantive danger the defendant's actions posed for society. The latter concern is the only legitimate basis for assigning criminal liability to the conduct. Thus, where the crime charged to have been attempted would have constituted a violation of our criminal laws, had the attendant circumstances been such as the actor believed them to be, whether commission was factually or legally impossible is of no moment. Criminal liability should attach in either instance because the actor's mental frame of reference reflects the requisite dangerousness to society to justify that result.

The effect of section 901(b) of the Crimes Code, 18 Pa.C.S. § 901(b), is to allow prosecution for an attempt, without regard to the impossibility of achieving the intended result, where the conduct would constitute the crime, if the attendant circumstances were as the actor believed them to be. However, as the majority points out, we must be careful to distinguish situations where the intended conduct is not a crime. The mere fact that one thinks his conduct is criminal, but it is in fact lawful conduct, does not provide a basis for attaching criminal liability. The actor's willingness to perform an act which society has not deemed criminal does not reflect the dangerous disposition that would warrant a criminal sanction.

Up to this point in the development of our law, we have not accepted a willingness to break the law as the sole criterion for attaching criminal liability. The abstract inclination to violate the law must be concretized into an intent to engage in specific conduct which, if completed as intended, would amount to a violation of the criminal law. In both instances there is a subjective willingness to engage in the activity regardless of its legality. The justification for criminal sanction in the latter is that the conduct intended and entered upon is in fact a crime.

Candor requires the acknowledgement that the new distinction we establish today is not beyond question. Experience may prove that this approach will produce its own problems in its application. Since I am not willing to accept the position that intent to break the law should be the sole criterion,* and the former approach has demonstrated its gross deficiencies, I applaud this legislative change.

LARSEN and ZAPPALA, JJ., join in this opinion.

---

* We should not rush to generalize proclivities beyond the proclivity to commit a specific recognized crime. To do otherwise would allow the law of attempt to manufacture crimes not previously defined by the legislature.