NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3714
_____

RUBENS FRANCIS, AKA Ruben Francis,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review from the
Board of Immigration Appeals
No. A058-822-408
Immigration Judge: Honorable Leo A. Finston
_____

Argued June 18, 2020

Before: SMITH, *Chief Judge*, CHAGARES, and PORTER, *Circuit Judges*

(Filed: July 23, 2020)

James S. Ballenger
Bradley Copeland          **[ARGUED]**
Eric Dement               **[ARGUED]**
University of Virginia School of Law
580 Massie Road
Charlottesville, VA  22903

    *Counsel for Petitioner*

Colin J. Tucker            **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Washington, DC  20044

      *Counsel for Respondent*

_____

OPINION[*]

_____

SMITH, *Chief Judge*.

Rubens Francis has filed a petition for review of the decision by the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) determination that an aggravated felony conviction renders him ineligible for cancellation of removal.  Because Francis failed to meet his burden to establish that he was not convicted of a qualifying theft offense, we will deny the petition.

I.

Francis is a native of Haiti and a lawful permanent resident of the United States.  In 2014, he pleaded guilty to one count of second degree possession of a

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

firearm for an unlawful purpose under N.J. Stat. Ann. § 2C:39-4(a) and one count of third degree conspiracy to commit theft by unlawful taking under N.J. Stat. Ann. § 2C:20-3(a).

In 2017, Francis was served with a notice to appear. At a subsequent hearing, the IJ found him removable under 8 U.S.C. § 1227(a)(2)(C) based on his firearm conviction. Francis applied for cancellation of removal under 8 U.S.C. § 1229b(a), but the IJ pretermitted the application based on a "disqualifying conviction for an aggravated felony": the theft by unlawful taking conviction. AR 37;[1] *see* 8 U.S.C. § 1229b(a)(3). Because Francis sought no further relief, the IJ ordered his removal.

Francis appealed to the BIA, challenging the pretermission of the cancellation application. The BIA agreed with the IJ that Francis had been convicted of an aggravated felony and is therefore ineligible for cancellation of removal. The BIA dismissed the appeal and Francis timely filed this petition for review. We appointed counsel.[2]

---

[1] "AR" refers to the administrative record.

[2] We express our gratitude to law students Bradley Copeland and Eric Dement, as well as their supervisor James Ballenger, all of the University of Virginia School of Law, for donating their time and talent through their zealous representation of Rubens Francis before our Court.

3

II.[3]

Under the Immigration and Naturalization Act (INA), "a theft offense (including receipt of stolen property) . . . for which the term of imprisonment [is] at least one year" qualifies as an aggravated felony. 8 U.S.C. § 1101(a)(43)(G). Because Francis's term of imprisonment was undisputedly longer than one year, the question before us is whether his unlawful taking conviction under N.J. Stat. Ann. § 2C:20-3(a) qualifies as a "theft offense." Francis bears the burden of establishing by a preponderance of the evidence that he was not convicted of a theft offense. *See Singh v. Att'y Gen.*, 807 F.3d 547, 550 (3d Cir. 2015); 8 U.S.C. § 1229a(c)(4)(A); 8 C.F.R. § 1240.8(d).

The INA does not define the term theft offense, but the accepted generic definition is a "taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Lewin v. Att'y*

---

[3] Although we generally have jurisdiction to review a final removal order pursuant to 8 U.S.C. § 1252(a), we may not review such an order if it is against an alien who is removable by reason of having committed an aggravated felony. 8 U.S.C. § 1252(a)(2)(C). We may, however, review whether an offense constitutes an aggravated felony. *Restrepo v. Att'y Gen.*, 617 F.3d 787, 790 (3d Cir. 2010). Our review of this legal question is de novo. *Id.*

4

*Gen.*, 885 F.3d 165, 168 (3d Cir. 2018) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007)). The BIA concluded this definition facially matches N.J. Stat. Ann. § 2C:20-3(a).[4]

When the elements of the crime of conviction match the elements of a generic offense, an applicant may attempt to establish "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime" and that the crime therefore cannot qualify as an aggravated felony.[5] *See Salmoran v. Att'y Gen.*, 909 F.3d 73, 77 (3d Cir. 2018) (quoting *Duenas-Alvarez*, 549 U.S. at 193). Francis attempts to establish a realistic probability that New Jersey courts apply § 2C:20-3(a) to conduct falling outside the generic definition of a theft offense.

Relying on *State v. Green*, 406 A.2d 310, 312 (N.J. App. Div. 1979),[6]

---

[4] Although § 2C:20-3(a) does not use the words "without consent," the New Jersey Supreme Court has interpreted the statute to include a "without consent" element. *See State v. Talley*, 466 A.2d 78, 81 (N.J. 1983).

[5] "[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved facts equating to the generic federal offense." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (citation omitted, cleaned up). Thus, if N.J. Stat. Ann. § 2C:20-3(a) is broader than a generic theft offense, it cannot be an aggravated felony. Francis's actual conduct is irrelevant to the analysis. *See Lewin*, 885 F.3d at 167. Instead, we must presume his conviction rested upon the least culpable of the acts criminalized by the statute. *Id.* at 168.

[6] In *Green*, the defendant and a co-conspirator arranged with a store employee to

5

Francis argues that New Jersey will "convict a defendant of theft when the property owner is informed that the defendant is planning to steal their property, and the owner then assists the defendant in the theft." Francis Br. 8. Francis contends that New Jersey's approach is a minority view that is not incorporated into the common law meaning of "without consent." In his opening brief, Francis identifies ten cases he reads as inconsistent with *Green* and four cases consistent with *Green.* This, he argues, establishes that New Jersey is in the minority.

We conclude that Francis has not demonstrated a realistic probability that N.J. Stat. Ann. § 2C:20-3(a) criminalizes conduct that falls outside the generic federal definition of a theft offense for three reasons.

First, *Green*—a lone case—is the only source of New Jersey authority

---

"buy" merchandise from a store in exchange for drugs. The employee reported the illicit plan to the police. The employee gathered and turned over the goods to the co-conspirator, and the police apprehended Green and his co-conspirator in the parking lot. The defendant argued that the larceny charge should have been dismissed "because the property the defendant was accused of taking was turned over to him with the knowledge and consent of its owner by prearrangement with the police." *Id.* at 311. The *Green* court observed there is some authority holding that there is no larceny when property is willingly given to a thief, even if the "giving" was for apprehension purposes. *Id.* at 312. But it noted there are other cases concluding that cooperation with the police does not amount to consent and can sustain a larceny conviction. *Id.* The *Green* court concluded that the "better-reasoned" cases view consent as absent in the police cooperation situation, and therefore adopted that rule. *Id.*

6

Francis identifies. It is not a decision by New Jersey's Supreme Court, nor does it apply Francis's statute of conviction. Moreover, he does not cite authority such as a treatise, state statutes, or the Model Penal Code to aid us in understanding whether consent as illustrated by *Green*—*i.e.*, a case where a property owner knowingly permitted a theft to occur in order to apprehend the thief—conflicts with the generic meaning of consent. *See United States v. Graves*, 877 F.3d 494, 502 (3d Cir. 2017) (considering the Model Penal Code, state laws, and treatises to identify the elements of the generic offense).

Second, Francis relies exclusively on his multi-jurisdiction survey, but has identified only a handful of states whose courts have addressed this nuanced issue. This incomplete survey suggests that the majority of states have never considered the issue at all. As the *Green* court observed, there is "respectable authority" on both sides. *Green*, 406 A.2d at 312. Even if there is a bare majority of states pointing away from *Green*, this relatively small sample does not assure us that New Jersey's approach to consent is "special" or "nongeneric."[7] *See Duenas-*

[7] Francis has not shown the sort of "significant" or "substantial" majority that we and the Supreme Court have relied upon in conducting similar analyses. *See Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1571 (2017) (considering, *inter alia*, the law of a "significant majority of jurisdictions" in determining the generic definition of "sexual abuse of a minor"); *Graves*, 877 F.3d at 502–03 (considering

*Alvarez*, 549 U.S. at 190–91.

Third and finally, we are skeptical of Francis's multi-jurisdiction survey. Many states adhere to the rule that "where the accused designs the offense and does all the acts necessary for its commission without the actual aid of the owner of the property, he is liable to punishment, although the owner may not prevent or may apparently acquiesce in its taking." *State v. Smith*, 117 P. 19, 21 (Nev. 1911). For consent purposes, the critical distinction is whether "the criminal design originates with the accused" (in which case there is no consent) or with the property owner (in which case there is consent). *Id.* at 23. As the Supreme Court of North Carolina put it, "[a] clear distinction is to be drawn between inducing a person to commit a crime he did not contemplate doing, and the setting of a trap to catch him in the execution of a crime of his own conception." *State v. Burnette*, 87 S.E.2d 191, 194 (N.C. 1955).

Under this line of reasoning, the property owner's knowledge of a planned crime—as in *Green*—does *not* amount to consent to the taking. A substantial

---

the view of "the substantial majority of states" in determining the generic definition of robbery). Moreover, in *Graves*, we instructed that the margin of the majority should be considered in defining a generic offense. *Graves*, 877 F.3d at 504 n.46. Here, Francis relies on a thin margin at best.

8

number of states in addition to New Jersey adhere to a similar rule.[8] This approach does not strike us as sufficiently "special" or "nongeneric" to remove all of these jurisdictions' view of consent from the generic definition of theft offense.

Thus, we are unpersuaded by Francis's claim that New Jersey's view of consent falls outside the generic theft definition. *See Duenas-Alvarez*, 549 U.S. at 190–91.

III.

For the foregoing reasons, Francis has not carried his burden to establish that his conviction under N.J. Stat. Ann. § 2C:20-3(a) does not constitute a theft offense. The petition for review therefore will be denied.

---

[8] *See Wright v. State*, 781 N.E. 2d 1139, 1141 (Ind. 2003); *State v. Ontiveros*, 801 P.2d 672, 674 (N.M. Ct. App. 1990); *State v. Mehozonek*, 456 N.E.2d 1353, 1356–57 (Ohio Ct. App. 1983); *Otte v. State*, 563 P.2d 1361, 1364 (Wyo. 1977); *Averitt v. State*, 149 So.2d 320, 324 (Miss. 1963); *Burnette*, 87 S.E.2d at 194–95; *State v. Neely*, 300 P. 561, 564–65 (Mont. 1931); *State v. Jarvis*, 143 S.E. 235, 236 (W.Va. 1928); *Jarrott v. State*, 1 S.W. 2d 619, 622 (Tex. Crim. App. 1927); *People v. Rodriguez*, 214 P. 452, 461 (Cal. Dist. Ct. App. 1923); *State v. Peterson*, 186 P. 264, 265 (Wash. 1919); *Edmonson v. State*, 89 S.E. 189, 190 (Ga. Ct. App. 1916) (special concurrence); *Smith*, 117 P. at 21; *Commonwealth v. Dougherty*, 18 Pa. D. 857, 858 (Pa. Ct. Quarter Sessions 1909); *Topolewski v. State*, 109 N.W. 1037, 1039 (Wis. 1906); *Lowe v. State*, 32 So. 956, 957 (Fla. 1902); *State v. Hull*, 54 P. 159, 161 (Or. 1898); *McAdams v. State*, 76 Tenn. 456, 460–61 (Tenn. 1881).